[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12266

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 17, 2011
JOHN LEY
CLERK

D. C. Docket No. 08-61175-CV-WJZ

LUIS CARLOS JOSENDIS,
and similarly situated individuals,

Plaintiff-Appellant,

versus

WALL TO WALL RESIDENCE REPAIRS INC.,
a Florida corporation, and,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 17, 2011)

Before TJOFLAT and COX, Circuit Judges, and KORMAN,[*] District Judge.

TJOFLAT, Circuit Judge:

This is a Fair Labor Standards Act case. Luis Carlos Josendis sued his former employer, Wall to Wall Residence Repairs, Inc.,[1] for unpaid overtime and back wages pursuant to the Fair Labor Standards Act of 1938 (the "FLSA"),[2] its implementing regulations, and Florida law for unpaid overtime and back wages. Wall to Wall moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief. Because Wall to Wall attached an affidavit and a statement of undisputed facts to its motion, the district court converted the motion to a motion for summary judgment pursuant to Rule 12(d) and gave the parties "a reasonable opportunity to present all the material that [was] pertinent to the motion."[3] Josendis did not avail himself of that opportunity

---

[*] Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

[1] Josendis also sued Wall to Wall's co-owners, Jorge Acosta and Eloisa Lim.

[2] See 29 U.S.C. § 201 et seq.

[3] Federal Rule of Civil Procedure 12(d) states, in pertinent part:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

until after the date the district court set for the completion of discovery, when he

served Wall to Wall with a battery of discovery requests. Wall to Wall objected to

this discovery and moved the court for a protective order under Rule 26(c).[4] The

court granted Josendis leave to engage in discovery limited to the issues presented

---

[4] Federal Rule of Civil Procedure 26(c) states:

> (1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
> (B) specifying terms, including time and place, for the disclosure or discovery;
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
> (E) designating the persons who may be present while the discovery is conducted;
> (F) requiring that a deposition be sealed and opened only on court order;
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c).

in Wall to Wall's motion, and sanctioned Josendis's attorney pursuant to Rule 37(a)(5)(B) for abusing the discovery process.[5]

At the close of this limited discovery, the court granted Wall to Wall summary judgment on Josendis's FLSA claim and dismissed his state law claim without prejudice. Josendis now appeals that ruling. He contends that material issues of fact precluded summary judgment and, alternatively, that, had the district court not limited his discovery as it did, he would have uncovered evidence that would have created material issues of fact. Josendis also appeals the district court's sanctions order against his attorney.

This opinion is organized as follows. Part I describes the FLSA, the facts germane to Josendis's FLSA claim, and the proceedings in the district court. Part II addresses the limited discovery the district court afforded Josendis after the time for discovery had closed, reviews the court's sanctions order, and concludes that

---

[5] Federal Rule of Civil Procedure 37(a)(5)(B) states:

> If the Motion Is Denied. If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B).

4

neither decision constituted an abuse of discretion. Part III deals with and rejects Josendis's challenges to the summary judgment. Part IV concludes.

I.

A.

The FLSA mandates that an "employee[]" who is "engaged in interstate commerce" must be paid an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week. 29 U.S.C. § 207(a).[6] If a covered employee is not paid the statutory wage, the FLSA creates for that employee a private cause of action against his employer for the recovery of unpaid overtime wages and back pay. Id. § 216(b).[7]

---

[6] The relevant provision states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

[7] Section 216(b) provides in relevant part, "[a]ny employer who violates the provisions of [29 U.S.C. § 207] shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

5

As defined by the statute, and subject to certain exceptions not at issue here, an employee is "any individual employed by an employer." Id. § 203(e)(1). The statutory definition of "employer" is similarly broad; it encompasses both the employer for whom the employee directly works as well as "any person acting directly or indirectly in the interests of an employer in relation to an employee." Id. § 203(d). We have accordingly held that the FLSA contemplates that a covered employee may file suit directly against an employer that fails to pay him the statutory wage, or may make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment. See Patel v. Wargo, 803 F.2d 632, 637–38 (11th Cir. 1986) (citing Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983) (explaining that a person is derivatively liable if he is intimately involved in the day-to-day operations of an employer that would be directly liable under the FLSA).

In order to be eligible for FLSA overtime, however, an employee must first demonstrate that he is "covered" by the FLSA. There are two possible types of FLSA coverage. See, e.g., Ares v. Manuel Diaz Farms, Inc., 318 F.3d 1054, 1056 (11th Cir. 2003) (citing 29 U.S.C. § 207(a)(1)). First, an employee may claim "individual coverage" if he regularly and "directly participat[es] in the actual movement of persons or things in interstate commerce." Thorne v. All Restoration

6

Servs., Inc., 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 C.F.R. § 776.23(d)(2) (2005); 29 C.F.R. § 776.24 (2005)); see also 29 U.S.C. § 207(a)(1) (mandating time-and-a-half for "employees . . . engaged in [interstate] commerce or in the production of goods for [interstate] commerce").  Second, an employee is subject to enterprise coverage if he is "employed in an enterprise engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 207(a)(1), where commerce means "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof," id. § 203(b), and an "enterprise" is the activities performed by a person or persons who are (1) engaged in "related activities," (2) under "unified operation or common control," and (3) have a "common business purpose," id. § 203(r)(1).

In relevant part, an enterprise is engaged in commerce or in the production of goods for commerce if it

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

Id. § 203(s)(1)(A)(i)–(ii) (emphasis added).  Alternatively, enterprise coverage is available to any employee of an enterprise "engaged in the operation of a hospital [or] an institution primarily engaged in the care of . . . the aged . . . who [also]

7

reside on the premises of such institution." Id. § 203(s)(1)(B).  An employee may be subject to either type, or both types, of FLSA coverage.  See Ares, 318 F.3d at 1056 (citing 29 U.S.C. § 207(a)(1)).

In aid of that statutory language, the U.S. Department of Labor (the "DOL") has issued interpretive regulations pertaining to both individual and enterprise coverage.[8]  We defer to those regulations when the statutory language is ambiguous or the statutory terms are undefined.  Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843–45, 104 S. Ct. 2778, 2781–83, 81 L. Ed. 2d 694 (1984) (requiring deference where the statutory language is ambiguous and the rule-making agency's regulation is a reasonable interpretation of Congress's intent); see also Falken v. Glynn Cnty., Ga., 197 F.3d 1341, 1345–46 (11th Cir. 1999) (deferring to the DOL's implementing regulation defining "fire protection activities," a term left undefined by the FLSA).  But we apply the statutory language as written when it is unambiguous.  Chevron, 467 U.S. at 842–43, 104 S. Ct. at 2781; see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S. Ct. 1942, 1947, 147 L. Ed. 2d 1 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition

---

[8] Congress tasked the DOL with interpreting the terms of the FLSA and issuing regulations thereunder.  See generally 29 U.S.C. § 204 (creating the DOL's Wage and Hour Division to administer the substantive provisions of the FLSA).

required by the text is not absurd—is to enforce it according to its terms." (quoting

United States v. Ron Pair Enters., 489 U.S. 235, 241, 109 S. Ct. 1026, 1030, 103 L.

Ed. 2d 290 (1989) (internal quotations marks omitted)).  Regulations entitled to

Chevron deference bind us in regard to the ambiguous text only.  Chevron, 467

U.S. at 843–45, 104 S. Ct. at 2781–83; cf. Skidmore v. Swift & Co., 323 U.S. 134,

140, 65 S. Ct. 161, 164, 89 L. Ed. 124 (1944) (applying limited deference to

agency interpretations that, "while not controlling upon the courts by reason of

their authority, do constitute a body of experience and informed judgment to which

courts and litigants may properly resort for guidance"); Pugliese v. Pukka Dev.,

Inc., 550 F.3d 1299, 1305 (11th Cir. 2008) (applying Skidmore deference).

One DOL regulation is at issue here, 29 C.F.R. § 776.23, which seeks to

extend enterprise coverage to all employees engaged in construction work that is

"closely or intimately related to the functioning of existing instrumentalities and

channels of interstate commerce or facilities for the production of goods for such

commerce."  Id. at § 776.23(c).  The relevant regulatory text reads:

> All employees who are employed in connection with construction
> work which is closely or intimately related to the functioning of
> existing instrumentalities and channels of interstate commerce or
> facilities for the production of goods for such commerce are within
> the scope of the [FLSA].  Closely or intimately related construction
> work includes the maintenance, repair, reconstruction, redesigning,
> improvement, replacement, enlargement, or extension of a covered
> facility.  If the construction project is subject to the [FLSA], all

9

> employees who participate in the integrated effort are covered, including not only those who are engaged in work at the site of construction such as mechanics, laborers, handymen, truckdrivers, watchmen, guards, timekeepers, inspectors, checkers, surveyors, payroll workers, and repair men, but also office, clerical, bookkeeping, auditing, promotional, drafting, engineering, custodial and stock room employees.

Id. (footnote omitted).[9] Under § 776.23(c), then, any employee who takes part in qualifying construction work, or is employed by an employer engaged in such work, would ostensibly be entitled to enforce the FLSA's wage provisions and collect FLSA mandated overtime—so long as § 776.23 is given the force of law.

The present appeal requires us to interpret the FLSA's individual and enterprise coverage provisions in light of the following operative facts and also to decide whether § 776.23(c) is deserving of Chevron deference. Now, having laid the statutory and regulatory groundwork for this appeal, we turn to those facts.

## B.

Wall to Wall, formerly a Florida corporation engaged in the home restoration and repair business,[10] employed Josendis from November 8, 2006, until February 11, 2008—excepting two months in 2007 when Josendis worked for a

---

[9] Section 776.23(c) approximates language that was once found in 29 U.S.C. § 203(s)(4) and that subjected employees engaged in construction or reconstruction to enterprise coverage. See, e.g., Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc., 780 F.2d 549, 554 (6th Cir. 1986). That language, however, is no longer a part of the FLSA.

[10] Wall to Wall is no longer an active corporation under Florida law.

separate construction enterprise. Jorge Acosta and Eloisa Lim, both codefendants, managed Wall to Wall and its employees and were directly involved in all of Wall to Wall's business activities during that period.

While working for Wall to Wall, Josendis was assigned to various construction projects in and around southern Florida. His duties included plumbing and tiling; window, door, floor, and kitchen installation; and stucco and granite work. He worked more than forty hours a week and earned approximately $120 per day. Wall to Wall did not, however, pay Josendis the overtime rate mandated by 29 U.S.C. § 207(a) for covered employees.

## C.

Josendis ceased working for Wall to Wall on February 11, 2008, after he got into a dispute over back wages he claimed that Wall to Wall still owed to him. On July 25, 2008, he brought this lawsuit against Wall to Wall, Acosta, and Lim (collectively "Wall to Wall"),[11] seeking back wages, unpaid overtime, liquidated damages, prejudgment interest, attorney's fees, and litigation expenses under the FLSA in Count I, and Fla. Stat. § 448.08, in Count II.[12]

---

[11] See supra note 1.

[12] The district court had jurisdiction over Count I pursuant to 29 U.S.C. § 217. The court had jurisdiction over Count II pursuant to 28 U.S.C. § 1367.
    Josendis sued on behalf of himself and other similarly situated Wall to Wall employees and former employees. His complaint contained no class allegations, however, and presumably

Wall to Wall responded on September 3, 2008, with a motion to dismiss the complaint for failure to state a claim for relief, see Fed. R. Civ. P. 12(b)(6), a statement of undisputed facts, an affidavit provided by Acosta, and a verified copy of Wall to Wall's 2006 federal tax return.[13]  Wall to Wall argued that the complaint should be dismissed because its allegations—coupled with the statement of undisputed facts, the affidavit, and the federal tax return—showed that Josendis was ineligible for overtime compensation under the FLSA via individual coverage and enterprise coverage.  As Acosta stated in his affidavit, (1) Josendis had not engaged in interstate commerce as a Wall to Wall employee, and (2) the $249,719 of income reported in the federal tax return evidenced that Wall to Wall had not satisfied the gross receipts threshold of $500,000 in any of the years in which Wall to Wall had employed Josendis.[14]  In its motion to dismiss, Wall to Wall asked the

for that reason he never sought class certification.  See generally Fed. R. Civ. P. 23 (pertaining to class actions).  We therefore consider Josendis's case as presenting only his individual claims.

[13]  Because Acosta and Lim were only derivatively liable, Wall to Wall's motion asked the court to dismiss the FLSA claim against them as well.

[14]  Wall to Wall also raised an alternative theory in support of its motion to dismiss.  In his affidavit, Acosta explained that Josendis was an illegal alien and that Wall to Wall had fired him immediately after Acosta learned about his immigration status.  Wall to Wall suggested that, as an illegal alien, Josendis was not entitled to bring a FLSA claim.
    In that regard, Wall to Wall claimed that the Supreme Court's decision in Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002), which held that an illegal alien fired in violation of the National Labor Relations Act, 29 U.S.C. § 151 et seq., was not entitled to an equitable award of back pay for the period during which he was unlawfully deprived of his rights to work, implicitly overruled our decision in Patel v. Quality Inn South, 846 F.2d 700 (11th Cir. 1988), which explicitly held that an illegal alien

12

district court to treat the motion as a motion for summary judgment, see Fed. R. Civ. P. 12(d), to the extent the court looked beyond the four corners of the complaint to reach the merits of its motion.

On September 19, 2008, Josendis filed a Verified Amended Complaint (the "VAC").[15]  The VAC presented the district court with additional factual allegations not found in his original complaint.  In particular, the VAC stated that: (1) Josendis performed at least fifteen kitchen replacements for Wall to Wall, at a minimum average value of $8,000 apiece, in 2007; (2) he, like all of Wall to Wall's other employees, worked on multiple jobs and at multiple job sites while employed by Wall to Wall; (3) in 2007, in addition to its regular remodeling work, Wall to Wall had also been hired to renovate twenty to thirty apartments at the Miami Jewish Home and Hospital for the Aged (the "Miami Home"); (4) Wall to Wall earned approximately $56,000 for one of the many jobs it completed in 2007; and (5)

_____

covered by the FLSA could recover unpaid back wages and overtime for work he actually performed.  We hold that the district court properly granted summary judgment for Wall to Wall on Josendis's claims to individual and enterprise coverage, and thus we do not address this alternative theory.

[15]  The VAC is the operative pleading in this appeal.  See Fed. R. Civ. P. 15(a)(1)(B) (permitting a party to amend his pleading as of right within twenty-one days of a responsive motion brought in accordance with Fed. R. Civ. P. 12(b)).  Because the VAC was a verified pleading bearing Josendis's signature, Josendis swore, under penalty of perjury, that the factual allegations contained therein were true and correct to the best of his knowledge and belief.  With minor exceptions not pertinent here, however, the VAC did not indicate which of the factual allegations were based on Josendis's personal knowledge, which were based on otherwise admissible evidence or testimony, and which were based on inadmissible hearsay or conjecture.

13

management provided Wall to Wall employees with the use of approximately ten company-owned vehicles as transportation to and from job sites.

The VAC also alleged that Acosta had regularly asked Wall to Wall's clients to make out checks payable directly to him or Lim instead of to Wall to Wall in exchange for not charging those clients sales tax, inferring that Wall to Wall's 2006 federal tax return had underreported the gross sales for that year and that Wall to Wall's 2007 and 2008 returns would likewise underreport the gross receipts. Extrapolating from the number of employees working for Wall to Wall, the number of jobs completed by Wall to Wall, the expenses sustained by Wall to Wall in completing those jobs, and Josendis's knowledge of Wall to Wall's average prices for specific jobs, the VAC alleged that Josendis's "belie[f]" was that Wall to Wall had gross sales in excess of $500,000 in both 2007 and 2008.

On October 3, 2008, Wall to Wall moved the district court to dismiss the VAC for failure to state a claim for relief or, alternatively, for summary judgment on the same grounds asserted in its September 3 motion: Josendis was ineligible for overtime compensation under the FLSA via individual and enterprise coverage. Josendis filed a memorandum in opposition to the motion on October 24, 2008. In the memorandum, he stated that he could not adequately defend against the motion,

14

if treated as a motion for summary judgment, without additional time to complete the discovery he thought would be necessary to establish FLSA coverage.

Despite the memorandum's statement that additional time was needed for discovery, Josendis did nothing to obtain this necessary information while Wall to Wall's motion was pending. In fact, nothing happened in the case until January 16, 2009, when the district court entered an order stating that it was treating Wall to Wall's motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) and granting Josendis "additional time for discovery." The order required him to "propound [all] discovery requests seeking information necessary to defend against the instant Motion for Summary Judgment" by noon on February 3, 2009. The court gave Wall to Wall fifteen days to respond to such discovery requests and Josendis ten additional days to, if necessary, supplement his memorandum in opposition to the motion.

When the clock struck noon on February 3, Josendis had not noticed the taking of any depositions or served Wall to Wall with any interrogatories or requests for admissions or production of documents. Nonetheless, approximately two hours after the court-imposed deadline had passed, Josendis faxed to defense counsel three sets of extensive discovery requests and a "notice" that he intended

to serve a subpoena on the Miami Home to obtain all of the financial records relating to its dealings with Wall to Wall.

The first set of discovery requests, sent at approximately 2:09 p.m., requested the production of twenty-three different categories of documents, covering the entire field of Wall to Wall's operations. Josendis's second set of requests, faxed forty-four minutes later, sought thirteen different admissions, most of which pertained to Wall to Wall's vehicles, equipment, employees, job history, and work at the Miami Home. His third set of requests, sent around 3:43 p.m., included nine interrogatories pertaining to Wall to Wall's customers, employees, and accounting practices.

The next day, February 4, 2009, Josendis moved the district court nunc pro tunc to extend the discovery period by four hours, i.e., to permit the discovery he had launched the afternoon of February 3, or, alternatively, for leave to conduct limited discovery pertaining only to Wall to Wall's work at the Miami Home. Josendis sought discovery of the work done at the Miami Home based on 29 C.F.R. § 776.23. To summarize, Josendis claimed that, because the Miami Home was a hospital or institution for the care of the aged, it was an enterprise involved in interstate commerce for purposes of FLSA coverage, 29 U.S.C. § 203(s)(1)(B), and that evidence of Wall to Wall's work at the Miami Home would accordingly

help him demonstrate that he was subject to enterprise coverage by virtue of 29 C.F.R. § 776.23(c).[16] The Miami Home's financial records could also have helped Josendis to establish that Wall to Wall had at least $500,000 in gross sales in 2007.

Wall to Wall opposed Josendis's motion on two grounds. First, the requests, including the subpoena Josendis intended to have issued to Miami Homes, were untimely.[17] Second, it argued that the requests were unnecessarily voluminous insofar as Josendis sought information that was not necessary to challenge the basis of Wall to Wall's motion for summary judgment—that Josendis could not establish FLSA coverage.

---

[16] To be more specific, Josendis reasoned that (1) the Miami Home qualified as a hospital or home for the aged and was, accordingly, a covered enterprise pursuant to 29 U.S.C. § 203(s)(1)(B); (2) by virtue of his work at the Miami home, he was, therefore, "employed in connection with construction work which [was] closely or intimately related to the functioning of [an] existing" covered enterprise, 29 C.F.R. § 776.23(c); (3) a covered enterprise is the functional equivalent of an "instrumentalit[y] and channel[] of interstate commerce or [a] facilit[y] for the production of goods for [interstate] commerce," id.; and (4) consequently, § 776.23(c) demanded that he be treated as "within the scope" of the FLSA's individual coverage protections, id. We address the merits of this syllogism in part III.C, infra.

[17] In addition to claiming that Josendis's requests were untimely, Wall to Wall also argued that, because the parties to litigation must give each other prior notice before serving a subpoena on a third party, Josendis should have given it notice of his intent to serve a subpoena on the Miami Home three full days before the noon deadline on February 3, 2009. See Fed. R. Civ. P. 45(b)(1) (mandating that, if a subpoena "commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party"). Wall to Wall further contended that, in any event, the court's January 16, 2009 order did not authorize Josendis to subpoena third parties and that the proposed subpoena was improper on that ground.

17

The court granted in part and denied in part Josendis's <u>nunc pro tunc</u> motion and denied Josendis's request for leave to subpoena the Miami Home's records. To the extent the court found Josendis's discovery requests germane to Wall to Wall's motion, it gave him leave to propound such requests. The court, however, tailored certain requests to the penultimate issues before the court: individual coverage and enterprise coverage. The court denied the motion as to the remainder of Josendis's requests, describing those requests as "overbroad and irrelevant"—meaning they did not pertain to Josendis's or Wall to Wall's involvement in interstate commerce or to the amount of Wall to Wall's gross receipts—or as "redundant."[18]

The district court then construed Wall to Wall's opposition to the discovery demands Josendis made after the February 3 deadline as a motion for a Rule 26(c) protective order with respect to "overbroad and irrelevant" or "redundant" requests the court disallowed.[19] The court granted the protective order and, based on the

---

[18] In all, the court granted Josendis's motion for additional time to serve Wall to Wall with five of twenty-three requests for production and limited the scope of two additional requests to certain documents pertaining to out-of-state transactions. The court approved six of thirteen requests for admission and "disallowed" the remaining requests for admission as "overbroad and irrelevant for purposes of responding to [the motion for summary judgment.]" The court finally approved three of nine interrogatories and limited an additional interrogatory seeking out-of-state addresses. It denied all of Josendis's other requests.

[19] Rule 26(c) states, in pertinent part:

(1) <u>In General</u>. A party . . . from whom discovery is sought may move for a

scattershot nature of Josendis's discovery demands, concluded that sanctions against Josendis's attorney, Gary A. Costales, were called for. As the court stated, "[i]t is obvious that the drafting of [Josendis's] instant discovery requests was done without any effort to constrain them within the bounds set for discovery at this time: responding to [Wall to Wall's summary judgment motion]." The court subsequently ordered Costales to pay Wall to Wall $330 in attorney's fees. See Fed. R. Civ. P. 26(c)(3), 37(a)(5).[20]

Wall to Wall thereafter complied with the court's instructions and completed, to the best of its ability, the ordered discovery.[21] On March 5, 2009,

protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(A) forbidding the disclosure or discovery;
. . . .
(C) prescribing a discovery method other than the one selected by the party seeking discovery; [and]
(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]

[20] Fed. R. Civ. P. 26(c)(3), concerning protective orders, permits a court to award expenses to any party who prevails in obtaining a protective order pursuant to Rule 37(a)(5), concerning motions to compel. In turn, Fed. R. Civ. P. 37(a)(5)(B) and (C), concerning motions to compel that are denied or that are granted in part and denied in part, respectively, authorizes any court who orders a protective order in response to a motion to compel to "apportion the reasonable expenses" associated with obtaining the protective order.

[21] Wall to Wall, however, was unable to provide Josendis with any of its financial documents from 2006, 2007, or 2008, save for the 2006 tax return and a financial summary prepared by Acosta in preparation for a separate FLSA lawsuit previously filed against Wall to Wall. At some point after the initiation of Josendis's suit, Wall to Wall had been evicted from its office for not paying rent. Once the property owner reentered the premises, Wall to Wall's business records were placed on the street. Neither Acosta nor Lim rescued those records, and they were

19

after reviewing the discovery Wall to Wall provided, Josendis filed a supplement to his opposition to the motion for summary judgment. The supplement incorporated Josendis's earlier response to the motion and argued that there was a genuine issue of material fact under both theories of FLSA liability: individual and enterprise coverage. As to the former theory, Josendis argued that his use of Wall to Wall's vehicles and the Global Positioning Satellite ("GPS") units installed in them presented a material issue of fact regarding individual coverage. As to the latter theory, Josendis argued that issues of fact remained as to whether (1) Wall to Wall had two or more employees handling, selling, or otherwise working on goods or materials that had moved in or had been produced for commerce and (2) Wall to Wall grossed more than $500,000 per year in 2006, 2007, or 2008. He also argued that 29 C.F.R. § 776.23(c) precluded summary judgment on his regulatory claim of enterprise coverage.[22]

Josendis found support for these arguments in the factual allegations of the VAC,[23] the discovery Wall to Wall provided, the affidavits of Troy Allen Whitten

_____

lost forever.

[22] In 2010 Fed. R. Civ. P. 56 was reorganized and altered. The district court's citation to Rule Fed. R. Civ. P. 56(e) is now Fed. R. Civ. P. 56(c)(4). The changes to the rules do not affect our analysis in any way. For clarity, we will refer to Fed. R. Civ. P. 56 as it appeared when the district court ruled on the motion for summary judgment.

[23] At the summary judgment stage, a verified pleading like the VAC may also serve as an affidavit—thereby providing evidence of the factual allegations contained therein—so long as it

20

and Wilard Dulanto, and the inferences reasonably drawn from this body of evidence. In their affidavits, Whitten and Dulanto stated that they had witnessed Wall to Wall customers pay Acosta, Lim, or individuals cooperating with Acosta and Lim, for work done by Wall to Wall employees. Whitten added that, in a conversation with Acosta, Acosta told him that Wall to Wall stood to make $13,000 to $14,000 per apartment remodeled at the Miami Home and that Wall to Wall might be asked to remodel all of Miami Homes' 101 apartments. Whitten said that he "believed" that in 2007 and 2008, Wall to Wall had "repaired or worked on at least thirty-one (31) [of those] apartments." Dulanto made a similar statement of belief in his affidavit. Whitten also said that he had witnessed a Wall to Wall secretary ordering over the internet—from a source she described as being "outside the State of Florida"—parts for the GPS units installed in each of the company's vehicles. Whitten lacked knowledge, though, of where the parts were actually manufactured, stored, or shipped.

On March 6, the day after filing his supplement, Josendis filed an affidavit augmenting what Whitten said about the GPS units. In his affidavit, Josendis

conforms to the requirements of Fed. R. Civ. P. 56(e). United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1444 n.35 (11th Cir. 1991) (explaining that, so long as Rule 56(e)—now Rule 56(c)(4)—is satisfied, the verified allegations in a complaint are treated as evidence at the summary judgment stage). As we explain infra, the VAC fails, in large part, to comply with Rule 56(e)'s personal knowledge requirement and therefore, to the extent of the failure, is not evidence a court may consider at summary judgment.

stated that he "regularly drove company vans which [he] believed were owned by [Wall to Wall] during the time of [his] employment" in 2006 and 2007, that those vans were equipped with GPS units, and that he used a GPS unit every day.

The district court granted summary judgment to Wall to Wall on Count I of the VAC on March 30, 2009. Josendis v. Wall to Wall Residence Repairs, Inc., 606 F. Supp. 2d 1376 (S.D. Fla. 2009). The court refused to consider many of the VAC's factual allegations because they did not comport with Rule 56(e)'s personal knowledge requirement;[24] two of Josendis's sworn "facts" were prefaced with the phrase, "[i]t is believed," and the rest were qualified by Josendis's statement that they were true "to the best of [his] knowledge and belief." Id. at 1379–80 (emphasis added). After discarding these allegations, all that was left to support Josendis's claim of individual coverage were his and Whitten's affidavit statements regarding the use of Wall to Wall's vehicles and GPS units. The court held that those statements were insufficient as a matter of law to establish individual coverage because they did not yield a permissible inference that Josendis engaged in interstate commerce when he used the vehicles or GPS units. Id. at 1383–84.

---

[24] Rule 56(e) states, in pertinent part, that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1) (2009) (amended 2010).

22

The district court also found nothing in the VAC and the affidavit Josendis attached to his supplemented opposition to Wall to Wall's motion that called into question, much less controverted, Acosta's affidavit statement that Wall to Wall had not grossed over $500,000 in sales in 2006, 2007, or 2008. Id. at 1380–81. Because there was no genuine issue of material fact as to that prerequisite for enterprise coverage, the court held that summary judgment was also warranted on that theory. Id. at 1381, 1383.

The district court then addressed and discarded Josendis's regulatory claim of enterprise coverage. Specifically, the court held that Josendis's reliance on 29 C.F.R. § 776.23 was misplaced for two reasons: (1) the proof that the Miami Home was a hospital or home for the aged as described by 29 U.S.C. § 203(s)(1)(B) was insufficient as a matter of law; and (2) section 776.23(c) was not entitled to Chevron deference because it concerned an unambiguous section of the FLSA. Id. at 1381–82. Having reached the foregoing holdings, the court entered a final judgment in favor of Wall to Wall.[25]

Josendis now appeals the district court's ruling. As indicated in the introduction to this opinion, Josendis submits that material issues of fact precluded

---

[25] The district court issued a separate order dismissing Count II of the VAC. The court reasoned that, having dismissed the federal claim which gave rise to its subject matter jurisdiction, dismissal of the state law claim was appropriate in the exercise of its discretion. 28 U.S.C. § 1367(c)(3).

summary judgment, and that the court would have agreed had it afforded him the discovery he requested. He also appeals the court's sanctions ruling against Costales.[26] We turn first to the discovery and sanctions issues, then to the merits of the summary judgment disposition.

## II.

## A.

The district court has broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery; we therefore review the court's discovery rulings for an abuse of that discretion. Sanderlin v. Seminole Tribe of Fla., 243 F.3d 1282, 1285 (11th Cir. 2001). "Discretion means the district court has a 'range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1337 (11th Cir. 2005) (quoting Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1324 (11th Cir.2005)). Accordingly, under "the abuse of discretion standard, we will leave undisturbed a district court's ruling unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." Guideone, 420 F.3d at 1325. Moreover, discovery rulings will not be overturned "unless it is shown that [they]

_____

[26] We have jurisdiction over Josendis's appeal pursuant to 28 U.S.C. § 1291.

resulted in substantial harm to the appellant's case." Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (quoting Carmical v. Bell Helicopter Textron, Inc., 117 F.3d 490, 493 (11th Cir. 1997) (citation and internal quotation mark omitted).

First, the district court did not abuse its discretion by denying Josendis's request to subpoena the Miami Home for the financial records arising out of its dealings with Wall to Wall. The court ordered that all discovery requests be submitted before noon on February 3, 2009. The court therefore had discretion to grant Wall to Wall a protective order in response to any discovery requests that were not submitted at or before that deadline. See Fed. R. Civ. P. 26(b) (reserving for the district courts broad authority to control the scope of discovery). And though the court had the authority to grant a post hoc extension of the discovery deadline for good cause, it was under no obligation to do so; in fact, we have often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion. E.g., Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc., 389 F.3d 1339, 1348–49 (11th Cir. 2004) (upholding under an abuse of discretion standard a district court's decision excluding an expert report disclosed after the deadline the court had established for its submission).

25

That premise is especially true when, as here, the party who seeks a reprieve from the court has not yet taken any discovery. Josendis's original complaint was filed on July 25, 2008; the discovery deadline was February 3, 2009; and, in between, Josendis propounded no interrogatories or requests and scheduled no depositions to obtain evidence that he had to have known would be, by the terms of his complaint, relevant to his claims. As such, because the district court had no duty to permit any discovery, its decision to deny Josendis's subpoena request as untimely noticed was not an abuse of discretion. See id.; see also Corwin v. Walt Disney World Co., 475 F.3d 1239, 1249 (11th Cir. 2007) (indicating that a district court commits an abuse of discretion only where it has clearly acted contrary to the law or the facts).

Second, the court did not abuse its discretion in denying in part Josendis's motion for additional time to begin discovery and granting Wall to Wall a protective order covering the denied discovery requests—in other words, the court was within the range of its broad discretion in declaring that the denied requests were either overbroad, irrelevant, or otherwise redundant. The court had previously ordered the parties to conduct only that discovery necessary to enable Josendis to respond to Wall to Wall's summary judgment motion. The ordered discovery, then, was intentionally limited by the court to the issues raised in that

26

motion; those issues—individual and enterprise coverage under the FLSA—defined the contours of permissible discovery. See Fed. R. Civ. P. 12(d) (requiring district courts to give the parties "a reasonable opportunity to present all the material that is pertinent to the motion" (emphasis added)). Any discovery requests that were not directly tied to individual and enterprise coverage accordingly exceeded the scope of the ordered discovery and, cabined by the court's discretion, were subject to denial and the issuance of a protective order. See Fed. R. Civ. P. 26(b–c); see also Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1570–71 (11th Cir. 1992) (finding no abuse of discretion when the district court denied discovery requests that were irrelevant to class certification).

As we explain in more detail below, the court correctly determined that the denied discovery requests were either outside the scope of its discovery order or otherwise flawed. At the very least, the court's decision was within its "range of choice" allotted under the abuse of discretion standard. See Betty K Agencies, 432 F.3d at 1337. For that reason alone, we must uphold the district court's decision to deny in part Josendis's motion and grant the protective order.

1.

The court disallowed the following requests for production in Plaintiff's First

Request for Production to Defendants as "overbroad" or "irrelevant," Order at 2–3,

Josendis v. Wall to Wall Residence Repairs, Inc., No. 0:08-cv-61175-WJZ (S.D.

Fla. Feb. 5, 2009):

> 1. Any and all documents that support, evidence, prove or relate to the allegations made in the [VAC].
> 2. Any and all documents that support, evidence, prove or relate to any of [Wall to Wall's] affirmative defenses.
> 3. All of the income reporting documents submitted by [Wall to Wall] to the Internal Revenue Service regarding the Plaintiff for [three calendar years prior to the filing of Josendis's original complaint on July 25, 2008 (the "relevant period of time")].
> 4. All of the income reporting documents submitted by [Wall to Wall] to the Internal Revenue Service regarding all hourly employees who worked for [Wall to Wall] for the relevant period of time . . . .
> 5. All of the income reporting documents submitted by [Wall to Wall] to the Internal Revenue Service regarding all employees who held the same position or similar position(s) as Plaintiff who worked for [Wall to Wall] for the relevant period of time . . . .
> 6. All time sheets, time cards, time records, attendance records and documents which evidence the hours worked by all employees of [Wall to Wall] for the relevant period of time.
> 7. Any and all documents relating to any wage claim and wage and hour complaint filed by any of [Wall to Wall's] former or current employees for alleged violations of the federal and/or state wage-hour statutes.
> . . . .
> 9. For each pay period commencing on the relevant period of time, all paychecks, pay reports, pay stubs, computer reports or printouts or other documents evidencing the amount paid to all employees of [Wall to Wall] for the relevant period of time.
> 10. All documents maintained pursuant to . . . 29 C.F.R. § 516.2 [(requiring employers to "maintain and preserve payroll or other

28

records" pertaining to employees covered by the FLSA)] relating to all employees.

11. All documents evidencing the reporting of the earnings of all employees of [Wall to Wall] to all third parties, which shall include, but shall not be limited to, insurance carriers, worker's compensation carriers, insurance agents and/or representatives, federal, state and local taxing authorities and the Florida Unemployment Compensation Fund.

12. To the extent any part of the remuneration and/or compensation paid to [Wall to Wall's] employees was not reflected in their respective paychecks, produce all documents evidencing the amount, date and nature and purpose of all such payments.

13. All documents pertaining the [sic] employees named in . . . [the VAC].

. . . .

15. All documents pertaining to [Wall to Wall's] work at the kitchen remodeling projects mentioned in . . . the [VAC].

16. All documents pertaining to vehicles owned or leased by [Wall to Wall] for [Wall to Wall's]' construction or related businesses.

. . . .

21. All documents pertaining to any remodeling or construction work performed by [Wall to Wall] for the relevant time period.

. . . .

23. All bank records pertaining to [Wall to Wall] for the relevant period of time.[27]

---

[27] The district court granted outright Josendis's <u>nunc pro tunc</u> motion, Order at 2–3, <u>Josendis v. Wall to Wall Residence Repairs, Inc.</u>, No. 0:08-cv-61175-WJZ (S.D. Fla. Feb. 5, 2009) as to the following requests for production:

> 8. All records reflecting a summary of the gross income of [Wall to Wall] including, but not limited to, IRS tax records, bank statements, balance sheets and records of any financial audit(s).
> . . . .
> 14. All documents pertaining to [Wall to Wall's]' work at the Miami Jewish Home and Hospital, including, but not limited to, bills, contracts, invoices, permits, vendor receipts, vendor invoices and change orders.
> . . . .
> 17. All documents pertaining to unemployment compensation premiums or other

Record, vol. 1, no. 33, Exhibit A at 3–5.

Josendis argues that these requests could be grouped into three categories: (1) documents in which Wall to Wall reported its income to the federal government; (2) documents pertaining to the earnings of employees; and (3) documents concerning Wall to Wall's past and present jobs.  He also suggests that each of these document categories could have potentially led to the discovery of admissible evidence, namely circumstantial evidence that Wall to Wall had $500,000 or more in gross sales in any of the three years in which it employed

---

amounts paid to the State or reported to the IRS.
18. All documents pertaining to worker's compensation insurance.
. . . .
22. All documents pertaining to any remodeling or construction work performed by [Wall to Wall] for any hospital or home for the aged.

Record, vol. 1, no. 33, Exhibit A at 4–5.
We agree that the court properly granted Josendis's motion in regard to these requests, which were neither overbroad nor irrelevant to FLSA coverage.
The court also approved two additional production requests, Order at 2, Josendis v. Wall to Wall Residence Repairs, Inc., No. 0:08-cv-61175-WJZ (S.D. Fla. Feb. 5, 2009), but ordered that they be narrowly read to pertain only to out-of-state projects and vendors, respectively. Those two requests were:

19. Copies of all permits pulled or sought by [Wall to Wall] or on behalf of customers of [Wall to Wall].
20. All receipt, invoices or other documents pertaining to any supplies purchased by [Wall to Wall].

Record, vol. 1, no. 33, Exhibit A at 5.
Because one of the penultimate issues in this case is whether Wall to Wall engaged in construction work that crossed state lines, 29 U.S.C. §§ 203(b), 203(s)(1)(A)(i), we see no abuse of discretion in the limitations the court placed on these requests.

30

Josendis. Presumably, Josendis reasons that, if he could have established that Wall to Wall's expenditures had exceeded a certain sum, he could have then argued that Wall to Wall must have met the statutory threshold for enterprise coverage. And seeing as he raised the possibility that Acosta had intentionally underreported Wall to Wall's income in 2006, Josendis asks that we overrule the district court and order the court to grant him additional discovery.[28]

Because the district court accurately characterized the denied requests, however, we cannot do as he asks. For instance, request 1, which seeks every document that relates to any of the allegations made in the VAC, was fairly construed as overbroad. Request 2 was certainly irrelevant, as Wall to Wall never once raised the possibility of asserting an affirmative defense to Josendis's claims. Requests 3 through 6 and 9 through 12 were also arguably irrelevant—they were aimed at subsidiary questions of how many hours Josendis and his fellow employees worked and how much they were paid, the answers to which would

_____

[28] Josendis further states that he needed additional leeway to complete discovery because Wall to Wall's corporate records had been destroyed. See supra note 21. This argument is unavailing. Josendis could have moved the district court to consider the destruction of Wall to Wall's corporate records as a bad faith act of spoilation, see, e.g, Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1310 (11th Cir. 2009) ("In the Eleventh Circuit, 'an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith.'" (quoting Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) (per curiam)), but he failed to do so. Absent a finding of spoilation, we cannot hold against Wall to Wall the loss of its financial records.

31

have little to nothing to do with interstate commerce or Wall to Wall's gross sales. Indeed, evidence obtained by virtue of those requests would only have been relevant if the court eventually found that Josendis was a covered employee under one type of FLSA coverage and then certified a class encompassing all of Wall to Wall's employees.

Furthermore, request 7 was entirely unmoored from issues of individual and enterprise coverage. Instead, it seeks information relating to potential past violations of wage-hour statutes, including violations of state laws outside the scope of the federal wage statute at issue here. And the remaining requests—13, 15, 16, 21, and 23—are all overbroad; each request solicits a broad spectrum of documents that, at first glance, would include a great number of materials unrelated to interstate commerce or the measure of Wall to Wall's sales in any fiscal year.

In that sense, it does not matter that Josendis believes he might have obtained circumstantial evidence of Wall to Wall's gross receipts from the documents he requested. The district court's denial was not unreasonable based on the limitations it placed on discovery under Federal Rule of Civil Procedure 12(d) and its inherent power to control discovery under Rule 26. We will not upset a district court's discovery ruling where, as now, its decision was within the realm of

reasonable choices allotted to it.  See Corwin, 475 F.3d at 1249; Betty K Agencies,

432 F.3d at 1337.

<div align="center">2.</div>

The same is true in regard to the following requests for admissions:

1. [The attached are] pictures of some of the vehicles owned or leased by . . . [Wall to Wall] . . . at some point during 2005-2008.
2. At any time during 2005–2008, [Wall to Wall] leased more than five vans or other vehicles for its construction work.
3. At any time during 2005–2008, [Wall to Wall] leased more than eight vans or other vehicles for its construction work.
4. At any time during 2005–2008, [Wall to Wall] lease or leased [sic] more than ten vans or other vehicles for its construction work.
5. At any time during 2005–2008, [Wall to Wall] leased at least one other vehicle for its construction work.
. . . .
12. [Wall to Wall] remodeled at least fifteen . . . kitchens during 2008.
13. [Wall to Wall] remodeled at least fifteen . . . kitchens during 2007.[29]

---

[29]  By way of contrast to the denied requests for admissions, the court granted Josendis's motion for additional time as to the following requests, Order at 3, Josendis v. Wall to Wall Residence Repairs, Inc., No. 0:08-cv-61175-WJZ (S.D. Fla. Feb. 5, 2009), all of which were on point and relevant to the question of enterprise coverage:

6. [Wall to Wall] performed work for the Miami Jewish Home and Hospital at some point during 2005–2008.
7.[Wall to Wall] performed work for the Miami Jewish Home and Hospital located at 5200 NE 2nd Avenue at some point during 2005–2008.
8. Plaintiff performed work on behalf of [Wall to Wall] at the Miami Jewish Home and Hospital.
9. [Wall to Wall] employed more than fifteen (15) employees in 2007.
10. [Wall to Wall] employed more than fifteen (15) independent contractors in 2007.
11. [Wall to Wall] was paid more than fifty-thousand dollars ($50,000) for its work at the Miami Jewish Home.

<div align="center">33</div>

Record, vol. 1, no. 33, Exhibit C at 1–2.

The district court denied these requests as either "overbroad" or "irrelevant." Order at 3, <u>Josendis v. Wall to Wall Residence Repairs, Inc.</u>, No. 0: 08-cv-61175-WJZ (S.D. Fla. Feb. 5, 2009). Josendis again claims, however, that had Wall to Wall been compelled to admit the foregoing facts he could have eventually proved that Wall to Wall's gross receipts were in excess of the $500,000 statutory threshold. Yet again we see no error in the court's characterizations of these requests. Requests 1 through 5 all deal with the vehicles Wall to Wall provided to its employees for their use in traveling to and from job sites. But any connection between Wall to Wall's decision to lease vehicles and its gross receipts was, at best, tenuous.[30] The court, then, made a permissible choice in denying Josendis's motion to requests 1 through 5.

---

Record, vol. 1, no. 33, Exhibit C at 2.

[30] Presumably, Josendis's position is as follows: Wall to Wall could not have remained in business for long if it outspent its earnings, and if Josendis could establish how much Wall to Wall had spent on its vehicles, Josendis could assume that Wall to Wall had, at the very least, earned that amount during the relevant time period.

There were two problems with that reasoning. First, earnings and spending are only loosely correlated; an enterprise can outspend its earnings in one year if that enterprise had a surplus in a previous year, and it could also borrow against projected future earnings to make up for a loss in the present year. Second, and more concretely, Wall to Wall actually failed, so it can be inferred that Wall to Wall actually spent more than it earned. Accordingly, even if Josendis were able to get the information he requested, he would still be unable to establish with any certainty—that is, beyond mere speculation—that Wall to Wall's expenditures bore any relationship to its earnings. As a result, the district court did not abuse its discretion when it denied Josendis the opportunity to obtain such circumstantial evidence.

34

Neither did the court abuse its discretion in deeming requests 12 and 13, both of which pertained to the number of kitchen renovations Wall to Wall employees performed during Josendis's employment, irrelevant to the question of FLSA coverage. The issue was not whether Wall to Wall actually performed remodeling work, but whether Wall to Wall had grossed $500,000 or more in sales per year as a result of that work. For that reason, the court's decision on requests 12 and 13 was an acceptable exercise of its discretion. See Corwin, 475 F.3d at 1249; Betty K Agencies, 432 F.3d at 1337.

3.

Finally, the district court did not abuse its discretion in denying Josendis's motion to compel as applied to the following interrogatories:

> 2. Please list the names of all businesses for which [Wall to Wall] performed any work, or provided services to, at any time between 2005–2008.
> . . . .
> 5. Has [Wall to Wall] ever leased or purchased any vehicles, or has some third party (or either individual Defendant) leased or purchased any vehicle for the use of [Wall to Wall]. If so, please state the make, model and year of the vehicle, and the dates owned or leased.
> 6. Please provide the last known names, addresses and phone numbers for all of the individuals referenced in Plaintiff's complaint and alleged to be current or former employees of [Wall to Wall].
> 7. Provide the names, last known addresses and telephone numbers of all employees of [Wall to Wall] who worked for [Wall to Wall] at any time during the three years preceding the time that Plaintiff's Complaint was filed.

35

8. State the name, address and telephone number of all Certified Public Accounting firms, accounts, accounting services, bookkeeping services and payroll services who provided services to [Wall to Wall] during the relevant period of time and include the name of each individual accountant or bookkeeper who performed such services if the Certified Public Accounting firm, accounting firm or bookkeeping firm is or was a partnership, corporation or professional association.[31]

Record, vol. 1, no. 33, Exhibit B at 5, 8–11.

The court denied Josendis's motion to compel as to each of these interrogatories because they were either overbroad, irrelevant, or "redundant to other discovery requests already allowed." The court was correct that the denied interrogatories were not specifically tailored to the issues raised in Wall to Wall's summary judgment motion. Interrogatories 1, 2, and 5, for example, were

---

[31] The district court granted Josendis's <u>nunc pro tunc</u> motion as to interrogatories 3, 4, and 9. Order at 3, <u>Josendis v. Wall to Wall Residence Repairs, Inc.</u>, No. 0:08-cv-61175-WJZ (S.D. Fla. Feb. 5, 2009). They read as follows:

> 3. Please list the type of businesses for which [Wall to Wall] performed any work, or provided services to, at any time between 2005–2008.
> 4. For any address or business listed in response to Interrogatories 1 through 3, please state whether Plaintiff performed any work for any such business or residences, and if so, which ones.
> . . . .
> 9. Please state the name and job title of the person(s) affirming these interrogatories.

Record, vol. 1, no. 33, Exhibit B at 6–7, 12.
The court also permitted Josendis to request, in interrogatory 1, that Wall to Wall provide "all addresses of all construction or remodeling jobs performed by [Wall to Wall] from 2005–2008," but limited the scope of that request to "all addresses for construction or remodeling jobs outside the State of Florida." <u>Id.</u> As before, we find no abuse of discretion in the court's limitation. <u>See</u> <u>supra</u> note 27.

overbroad and irrelevant based on our prior discussion. Interrogatories 1 and 2 were also redundant based on the district court's decision to compel Wall to Wall to respond in limited fashion to interrogatory 1, which requested that Wall to Wall provide the addresses of all of its construction or remodeling jobs during the relevant time period, and to interrogatories 3 and 4, which requested that Wall to Wall list the clients for whom Wall to Wall and/or Josendis had performed any work between 2005 and 2008.

Interrogatories 6 and 7, which again sought information about other Wall to Wall employees employed at the same time as Josendis, were irrelevant for the same reasons that the just-discussed requests were irrelevant. Also, interrogatory 8, concerning Wall to Wall's accounting practices, was redundant based on the court's prior decision to compel Wall to Wall to produce "[a]ll records reflecting a summary of the gross income of [Wall to Wall] including, but not limited to, IRS tax records, bank statements, balance sheets and records of any financial audit(s)."[32]

Ultimately, then, we find nothing in the record to indicate that the district court abused its discretion in denying Josendis' motion to compel. As applied to the above requests and interrogatories, the court's order denying the motion was

---

[32] See supra note 31.

37

within the bounds of reason and the law, and we will not disturb it. See Corwin, 475 F.3d at 1249; Betty K Agencies, 432 F.3d at 1337. We now turn to the question of sanctions.

B.

"[T]he standard of review for an appellate court in considering an appeal of sanctions under [Federal Rule of Civil Procedure] 37 is sharply limited to a search for abuse of discretion and a determination that the findings of the trial court are fully supported by the record." Carlucci v. Piper Aircraft Corp., 775 F.2d 1440, 1447 (11th Cir. 1985) (internal quotation marks omitted). A district court abuses its discretion only when it misapplies the law or bases its decision on findings of fact that are clearly erroneous. Mincey v. Head, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000). Therefore, we will not reverse the imposition of sanctions under Rule 37 unless we are "left with a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors." Dorey v. Dorey, 609 F.2d 1128, 1135–36 (5th Cir. 1980) (internal quotation marks omitted) (quoting Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 506 (4th Cir. 1977)).[33]

_____

[33] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

A district court may award sanctions under Rule 37(a)(5)(B) only if, upon considering a Rule 26(c) motion for a protective order set against a Rule 37(a) motion to compel discovery, the court (1) denies the motion to compel because it was not "substantially justified," and (2) issues the protective order.[34]  Fed. R. Civ. P. 37(a)(5)(B).  In that case, unless "other circumstances make an award of expenses unjust," the court may award the prevailing party the "reasonable expenses incurred in opposing the motion" to compel, including attorney's fees.  Id.  Those sanctions may issue against the party seeking discovery, that party's attorney, or both.  Id.  Rule 37(a)(5)(C) similarly permits a court to "apportion the reasonable expenses" incurred in opposing a motion to compel if the court denies in part and grants in part a party's motion to compel.

In the context of these two rules, a motion to compel is "substantially justified" so long as "there is a genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action]."  Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490 (1988) (alteration in original) (citations and internal quotation marks omitted) (comparing Rule 37's

_____

[34]  Federal Rule of Civil Procedure 37(a)(5)(B) states that a district court "must not order" the payment of attorney's fees after denying a motion to compel if the party moving to compel discovery was "substantially justified" in making the requests or if "other circumstances make an award of expenses unjust."  Thus, if a motion to compel is "substantially justified," sanctions cannot issue.  Fed. R. Civ. P. 37(a)(5)(B).

39

"substantially justified" language to a similar provision in the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)). Thus, as would be expected, the award of sanctions under Rule 37(a)(5) turns on the specifics of each individual case.

Here, the district court awarded $330, the amount of attorney's fees incurred by Wall to Wall in opposing Josendis's post-deadline discovery demands, in the form of sanctions against Costales. The court did so only after finding that Costales had "obvious[ly]" drafted his discovery requests "without any effort to constrain them within the bounds set for discovery" by the court. Based on its impression of Costales's work, the district court then determined that the requests were "not substantially justified" in light of the limitations imposed. Costales now argues that the court abused its discretion in imposing sanctions because the discovery requests should not have been denied or, alternatively, were made in good faith, as the court's discovery order did not specifically indicate how far into the evidence it would allow Josendis to reach in opposing summary judgment. Costales also argues that his service as a member of the federal bar, during which time he had only once been sanctioned prior to this controversy, counsels against the imposition of sanctions in this case.

The record, however, fully supports the district court's holding that the denied discovery requests were not "substantially justified." As we previously

40

explained, the court did not err in deeming those requests overbroad, irrelevant, or redundant. Neither do we believe that the district court's finding that reasonable people could not differ as to the appropriateness of the denied requests was "clearly erroneous," Mincey, 206 F.3d at 1137 n.69, or a "clear error of judgment," Dorey, 609 F.2d at 1136. Moreover, although we laud Costales for his prior service, past good behavior is no defense against present misconduct. Accordingly, we uphold the court's imposition of sanctions against Costales and proceed to discuss the appropriateness of the court's order granting summary judgment to Wall to Wall.

### III.

We review a district court's grant of summary judgment de novo and apply the same legal standards as the district court, "construing the facts and drawing all reasonable inferences therefrom in the light most favorable to the non-moving party." Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005). We affirm a district court's grant of summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (2009) (amended 2010).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  Once the moving party makes the required showing, the burden shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings.  Id. at 324, 106 S. Ct. at 2553; see also Corwin v. Walt Disney Co., 475 F.3d 1239, 1249 (11th Cir. 2007) (explaining that evidence inadmissible at trial may not generally be considered at summary judgment).  All affidavits must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence, Macuba v. DeBoer, 193 F.3d 1316, 1322–23 (11th Cir. 1999), and the non-moving party cannot satisfy its burden if the rebuttal evidence "is merely colorable, or is not significantly probative" of a disputed fact, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (citation omitted).  When the non-moving party fails under this rubric to "make a showing sufficient to establish" an essential element of its case, summary judgment is appropriate.  Celotex, 477 U.S. at 322, 106 S. Ct. at 2552; see also Johnson v. Bd. of Regents of the Univ. of Ga., 263 F.3d 1234, 1243 (11th Cir. 2001) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party

42

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."(third alteration in original)).

There appears to be no dispute in this case that Josendis was an employee of Wall to Wall, an employer, or that Acosta and Lim would be derivatively liable for unpaid back wages and FLSA overtime if Josendis were entitled to recover against Wall to Wall. The question we must face, then, is whether Wall to Wall's 2006 tax return[35] combined with the factual statements contained in the VAC and the affidavits before the district court—those executed by Acosta, Josendis, Whitten, and Dulanto—would be: (1) admissible at trial, and (2) sufficiently probative of an essential element of his case to raise a genuine issue of material fact.[36]

As explained below, Josendis has failed to make a showing sufficient to survive summary judgment. In short, he has not satisfied his burden of coming forward with any admissible evidence beyond mere speculation to rebut Wall to Wall's evidence on the essential elements of individual and enterprise coverage.

---

[35] Josendis does not dispute that Wall to Wall's 2006 tax return would be admissible evidence at trial.

[36] In deciding this question, we must, as always, liberally construe the FLSA's terms to ensure that coverage extends "to the furthest reaches consistent with congressional direction," while narrowly construing coverage exemptions. Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296, 105 S. Ct. 1953, 1959, 85 L. Ed. 2d 278 (1985).

A.

An employee is subject to individual coverage if he is directly and regularly "engaged in" interstate commerce. Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1266 (11th Cir. 2006). As Thorne explains, indirect or sporadic involvement in commerce is insufficient:

> [F]or an employee to be "engaged in commerce" under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel.

Id. (emphasis added) (citing McLeod v. Threlkeld, 319 U.S. 491, 493–98, 63 S. Ct. 1248, 1249–52, 87 L. Ed. 1538 (1943)).

For Josendis to survive summary judgment, he needed to produce admissible evidence that he (1) worked directly for an instrumentality of interstate commerce, or (2) regularly used the instrumentalities of interstate commerce. See Corwin, 475 F.3d at 1249. Josendis was not working directly for an instrumentality of interstate commerce. Josendis would therefore have had to come forward with evidence, beyond mere speculation, that, as a part of his work duties, he repeatedly traveled to and from Wall to Wall job sites outside of Florida or used an item moving in interstate commerce. See Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. Josendis

44

did not make a showing that he directly engaged in interstate commerce as a part of his responsibilities and, thus, cannot survive summary judgment on this record. See Thorne, 448 F.3d at 1266 ("The Supreme Court has articulated that it is the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce." (emphasis added)).

First, Josendis never traveled outside of Florida for purposes of his employment with Wall to Wall. In the affidavit attached to Wall to Wall's summary judgment motion, Acosta declared that Josendis had no interaction with Wall to Wall's customers and only performed construction and remodeling work within Florida. Josendis presented no evidence to dispute Acosta's declaration. Because Josendis did not travel across state lines as part of his work for Wall to Wall, he cannot claim individual coverage based on any of the travel he completed.

Second, Josendis produced no evidence to indicate that he ever participated in the actual movement of any object in interstate commerce. As noted previously, Josendis never claimed that he used Wall to Wall's vehicles to travel to a job site outside Florida. Instead, Josendis claimed only that Wall to Wall had purchased or leased vehicles that had, at some point, moved in interstate commerce and equipped those vehicles with GPS units that took parts ordered over the internet

45

from other states.[37]   While the point of origin of these vehicles may be relevant

under a theory of enterprise coverage, their origin is irrelevant to the issue of

individual coverage—namely, whether Josendis himself <u>directly participated</u> in the

<u>actual movement</u> of persons or things in interstate commerce.  <u>See</u> <u>id.</u> at 1266.

Furthermore, although parts for the GPS units may have come from outside

Florida, Josendis did not show that he was directly involved in the acquisition or

use of those parts; instead, Josendis's own evidence shows that he used <u>fully</u>

<u>assembled</u> GPS units entirely within Florida.  Thus, Josendis was not participating

in the "actual movement of persons or things in interstate commerce," and is not

covered individually by the FLSA.  <u>See</u> <u>id.</u> at 1268 (holding that an employee

engaged in restoration work for an enterprise that operated entirely intrastate was

not individually covered under the FLSA based on use of goods that previously

moved in interstate commerce).

In sum, Josendis produced nothing to create a material issue of genuine fact

as to his "direct[] participat[ion]" in interstate commerce under an individual

coverage theory.  <u>Id.</u> at 1266.

---

[37] Josendis and Whitten also mentioned an air compressor that used parts purchased from out of state by a Wall to Wall secretary.  Josendis does not, however, appear to argue that his use of the air compressor, including those parts purchased from out of state, entitles him to individual coverage under the FLSA, nor would he succeed if he did for the same reasons we discuss in relation to Wall to Wall's vehicles and GPS units.

B.

An enterprise like Wall to Wall is subject to the FLSA's overtime wage provision, so long as it (1) has at least two employees engaged in interstate commerce or the production of goods for interstate commerce, or who handle, sell, or otherwise work on goods or materials that had once moved or been produced for in interstate commerce, and (2) has gross sales of at least $500,000 in sales annually. 29 U.S.C. § 203(s)(l)(A)(i)–(ii) (2006). Acosta's affidavit was, once again, evidence in support of Wall to Wall's position that none of Wall to Wall's employees utilized goods or materials that had previously moved in interstate commerce and that Wall to Wall never grossed, at minimum, $500,000 in sales in 2006, 2007, or 2008. Therefore, to create a genuine issue of material fact, Josendis needed to provide concrete, admissible evidence that Wall to Wall met both statutory requirements.[38] Josendis, however, did not make that showing.

At the outset, we hold that Josendis failed to provide any concrete evidence that Wall to Wall had gross sales of at least $500,000 in any one year. This alone means that his argument must fail. The district court aptly described the problem

---

[38] Josendis has repeatedly argued that he only needed to present evidence of Wall to Wall's gross receipts. It is his position that, if he can prove that Wall to Wall grossed at least $500,000 in 2006, 2007, or 2008, then, by virtue of that fact alone, Wall to Wall will be subject to enterprise coverage. While it might prove true that virtually every enterprise with $500,000 or more in gross sales is engaged in interstate commerce, the statute is clear, and Josendis must address both prongs of 29 U.S.C. § 203(s)(l)(A).

47

with Josendis's opposition to Wall to Wall's motion for summary judgment: in his opposition, Josendis principally relied on conjecture and speculation, not admissible evidence based on personal knowledge. For example, the VAC and the affidavits Josendis submitted to the district court do nothing more than describe how much Wall to Wall stood to make on each of its projects—evidence that, on its own, does not establish that Wall to Wall satisfied the statutory threshold. The VAC and the affidavits then extrapolate from that evidence a "belief" that Wall to Wall's gross sales met or exceed $500,000 annually. Whatever the merit of Josendis's belief, his showing before the district court was not enough to preclude summary judgment. Cf. Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002) (interpreting the Federal Rules of Civil Procedure's personal knowledge requirement to require more than affidavits based only on "information and belief"); Stewart v. Booker T. Washington Ins., 232 F.3d 844, 851 (11th Cir. 2000) (stating that assertions of fact based "[u]pon information and belief" are insufficient (alteration in original)).

The relevant factual allegations found in the VAC indicate that Wall to Wall employed twenty employees from 2006 through 2008, paid those employees $120 per week, utilized approximately ten vehicles, earned $56,000 for one project completed in 2007, charged approximately $8,000 for each of fifteen kitchen

remodels performed by Josendis in 2007, and, as evidenced by Josendis's

knowledge that Acosta had received personal checks for Wall to Wall's work,

potentially underreported its income to the Internal Revenue Service in 2007. Each

of these allegations was "true and correct . . . to the best of [Josendis's] knowledge

and belief." The VAC then concluded with Josendis twice alleging that, "[i]t is

believed, based on [the foregoing allegations] that [Wall to Wall] had gross sales

of more than . . . $500,000 . . . in [2007 and 2008]."

Whitten's affidavit likewise provided some evidence that Acosta had been

paid personally for Wall to Wall's work, as Whitten stated that, at Acosta's

direction, he had personally cashed at least one check from a Wall to Wall client

for $5,000. Furthermore, Whitten indicated that he "believe[d]" Wall to Wall had

completed work on thirty-one apartments at the Miami Home at a minimum

average cost of $13,000 to $14,000 per apartment.[39] At most, this evidence

establishes that Wall to Wall potentially earned $56,000 for one job in 2007;

approximately $120,000 for kitchen remodels also in 2007; $5,000 for an unknown

project at an unknown date; and about $434,000 for work at the Miami Home over

a two-year period in 2007 and 2008.

---

[39] Dulanto's affidavit, mentioned previously, did not provide any information that would be relevant to Wall to Wall's gross sales.

But as Josendis and Whitten did not ground their projections in admissible evidence concretely establishing the true measure of Wall to Wall's gross sales per year, nor did they explain how they came to their <u>belief</u> that Wall to Wall had earned $500,000 in any one of the relevant years, we cannot accept their word on the matter.[40]  Even accepting that the evidence establishes that Wall to Wall earned the amounts identified above, Josendis still fails to show that in any one year Wall to Wall met the $500,000 threshold; pointing to estimated income obtained at some unknown point over a two-year period was simply not sufficient.

Unreliable conjecture that Wall to Wall worked on a certain number of apartments, presented as a "belief" without any basis in ascertainable fact, was not the type of admissible evidence required to survive a motion for summary judgment.  <u>See</u> <u>Corwin</u>, 475 F.3d at 1249 (stating that evidence inadmissible at trial generally may not be considered at summary judgment).  At the summary judgment stage, such "evidence," consisting of one speculative inference heaped upon another, was entirely insufficient.  <u>See Cordoba v. Dillard's, Inc.</u>, 419 F.3d 1169, 1181 (11th Cir 2005).  Absent more "significantly probative" evidence of Wall to Wall's gross sales, <u>Anderson</u>, 477 U.S. at 249–50, 106 S. Ct. at 2511,

---

[40]  For example, Josendis might have obtained a corporate ledger indicating that Wall to Wall made at least $500,000 in 2006, 2007, or 2008.  Alternatively, Josendis or Whitten might have stated that they directly witnessed a transactions in which Wall to Wall was paid certain, specific sums and then added those sums together to reach the $500,000 statutory threshold.

Josendis cannot establish that Wall to Wall's gross sales met the FLSA's gross sales requirement for enterprise coverage, see 29 U.S.C. § 203(s)(1)(A)(ii). This is true even when the evidence upon which Josendis relies is viewed in the light most favorable to him. See Centurion Air Cargo, 420 F.3d at 1149.

Having found that Josendis did not make a sufficient showing to establish that Wall to Wall's annual gross sales reached the $500,000 statutory threshold, we need not dwell on the other element necessary to establish enterprise coverage—whether the use of the vehicles, parts for the GPS device, and any other object that Josendis claims he handled qualifies as a "good or material that has been moved" previously in interstate commerce. In Polycarpe v. E&S Landscaping Service, Inc., 616 F.3d 1217 (11th Cir. 2010) (per curiam), this court carefully analyzed the language of § 203(s)(1)(A), providing the framework for any future analysis. In doing so, the Polycarpe court once more rejected the "coming to rest" doctrine as a basis for claiming that a good or material that had previously moved in interstate commerce can somehow lose its interstate character if it "comes to rest" prior to the intrastate purchase by a business. See id. at 1221 ("An erroneous view of FLSA enterprise coverage—one that hangs on what is called the 'coming to rest' doctrine—is at odds with this statutory text.")

At the same time, however, the Polycarpe panel also highlighted the continued applicability of the "ultimate-consumer exception" found in the statutory text itself. Id. at 1222 ("Included in this definition of 'goods' is a clause often referred to as the ultimate-consumer exception."); see also 29 U.S.C. § 203(i) ("'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." (emphasis added)). Congress failed to define the term "materials" in the FLSA, so we attempted to do so in Polycarpe. The Polycarpe panel concluded that the term "materials" in the FLSA means "tools or other articles necessary for doing or making something." 616 F.3d at 1223–24 (noting that the best definition of materials is the one that does not "impliedly repeal" any of the statutory definition of "goods"). As that panel noted, the distinction between whether an object is a good, where the ultimate-consumer exception applies, or a material, where there is no exception, is a crucial one. See id. at 1222 ("We must be able to distinguish 'goods' from 'materials' to know whether the ultimate-consumer exception might apply: the exception applies to some 'goods' but never to 'materials.'").

Because we find, even viewing the evidence in the light most favorable to him, that Josendis failed to show that Wall to Wall generated gross sales of $500,000 in any one year, we need not engage in the herculean task of determining whether vehicles, such as cars and trucks; parts of a GPS unit; and other tools and supplies, such as paint, tape, drywall, or nails are best characterized as "goods" or, alternatively, "materials" under the FLSA. Likewise, we need not then determine whether the "goods" were subject to the ultimate-consumer exception. Josendis, therefore, failed to create a genuine issue of material fact as to Wall to Wall's sales, and the district court did not err in granting summary judgment.

### C.

Finally, we also concur in the district court's rejection of Josendis's regulatory argument. Josendis seeks to claim enterprise coverage based on 29 C.F.R. § 776.23(c), which purports to bring "within the scope" of the FLSA all employees engaged in construction work, including maintenance and repair work, that is "closely or intimately related" to a covered enterprise. Josendis claims that this coverage is available to him by virtue of his remodeling work at the Miami Home, which he contends is an "enterprise engaged in commerce or the production of goods for commerce" under 29 U.S.C. § 203(s)(1)(B), which defines a covered enterprise as one "engaged in the operation of a hospital, [or] an institution

53

primarily engaged in the care of . . . the aged . . . who reside on the premises of such institution." Josendis asserts that we must, under Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc., 467 U.S. 837, 843–45, 104 S. Ct. 2778, 2781–83, 81 L. Ed. 2d 694 (1984), defer to the DOL's regulatory language and find enterprise coverage applicable here.

The district court disagreed with Josendis and refused to apply Chevron deference for two reasons. First, the court found insufficient evidence in the record to determine whether the Miami Home was a facility for interstate commerce pursuant to § 203(s)(1)(B)—that is, whether the Miami Home was a hospital or institution engaged in the care of aged individuals residing on its premises. Second, the district court held that, even assuming the Miami Home was an interstate facility, § 776.23(c) was not a binding interpretation of the statutory text.

While we express no opinion on the district court's first ground for denying enterprise coverage under § 776.23(c), we find that the court correctly determined that Chevron deference is unwarranted. We apply Chevron deference when an agency properly exercises their authority, expressly or implicitly delegated by Congress, to interpret an ambiguous statute, and then promulgate rules and regulations carrying the force of law. See Chevron, 467 U.S. at 843–44, 104 S. Ct. at 2782; see also United States v. Mead Corp., 533 U.S. 218, 226–27, 121 S. Ct.

54

2164, 2171, 150 L. Ed. 2d 292 (2001) (holding that <u>Chevron</u> deference applies "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority"). We do not apply <u>Chevron</u> deference, however, when a statutory command of Congress is unambiguous or the regulation is "arbitrary, capricious, or manifestly contrary to the statute." <u>Chevron</u>, 467 U.S. at 842–44, 104 S. Ct. at 2781–82. Where the statutory language in clear, agency regulations have no effect. <u>Carcieri v. Salazar</u>, --- U.S. ---, 129 S. Ct. 1058, 1063–64, 172 L. Ed. 2d 791 (2009) (holding that if the statutory text is unambiguous then we apply the statute according to its terms).

The FLSA's text concerning enterprise coverage, at least as it relates to Josendis's case, is clear and unambiguous. An employee must be employed "in an enterprise engaged in commerce or in the production of goods for commerce" in order to be entitled to FLSA overtime under an enterprise coverage theory. 29 U.S.C. § 207(a)(1) (2006). We, like the district court, believe that this text can only be construed to cover employees actually employed by the covered enterprise; in any event, it cannot stretch so far to accommodate employees employed by a third party that performs sporadic work for a covered enterprise.

Josendis was not employed in a covered enterprise;[41] as we previously explained, Wall to Wall was entitled to summary judgment because, as Josendis's employer, it did not satisfy the statutory annual gross sales requirement found in 29 U.S.C. § 203(s)(l)(A)(ii). Furthermore, Josendis never alleged that he was actually employed by the Miami Home—potentially a FLSA-covered enterprise pursuant to § 203(s)(1)(B). In fact, Josendis clearly characterized the work he completed at the Miami Home as being the work of Wall to Wall. Therefore, under the FLSA's clear terms, Josendis's regulatory theory fails, and summary judgment for Wall to Wall was also proper on that ground.

IV.

---

[41] The FLSA defines an enterprise as an activity where a person or persons are: (1) engaged in related activities, (2) under unified operation or common control, and (3) have a common business purpose. 29 U.S.C. § 203(r)(1) (2006). Under that definition, the Miami Home and Wall to Wall cannot be considered a single enterprise: they were not engaged in related activities; they were controlled by different persons; and they have widely divergent business purposes. Because the Miami Home and Wall to Wall were not a single enterprise, the fact that Josendis was "employed in" an enterprise consisting of Wall to Wall and its employees, does not permit him to claim enterprise coverage by virtue of the work he did for Wall to Wall at the Miami Home. Stated a different way, because Wall to Wall and the Miami Home were separate enterprises, Josendis would have to prove that he was "employed in" the Miami Home enterprise to claim enterprise coverage under the FLSA.

Furthermore, an enterprise does "not include . . . related activities performed for [a covered] enterprise by an independent contractor." Id. Therefore, the enterprise consisting of the Miami Home does not include the activities conducted by Josendis; Josendis was not an employee of the Miami Home, but rather should be characterized as either an independent contractor brokered through Wall to Wall or an employee of Wall to Wall, also an independent contractor. By virtue of this definition, Josendis was not "employed in" the Miami Home's enterprise, and thus he cannot claim enterprise coverage on that ground either.

56

Having found no error in the district court's discovery decisions, imposition of sanctions, or its order granting summary judgment in favor of Wall to Wall, we hereby AFFIRM the district court's decision in this case.

AFFIRMED.

KORMAN, District Judge, dissenting:

I agree with the conclusion of the majority opinion in Part III.C and its rejection of "enterprise coverage" based on 29 C.F.R. § 776.23(c). I also agree with the majority opinion that Josendis failed to come forward with sufficient evidence that, as part of his duties, he participated in the movement of any object in interstate commerce or travelled to Wall to Wall job sites outside of Florida.

I have some serious problems with respect to the issue whether Josendis is covered pursuant to the provisions of 29 U.S.C. § 203(s)(1)(A), which provides coverage to employees of an enterprise that (1) has employees who handle, sell, or otherwise work on goods or materials that had once moved in or been produced for interstate commerce, and (2) has gross sales of at least $500,000. Contrary to the majority, there is a compelling argument to be made that the district court should have denied the motion for summary judgment. The motion turns solely on the credibility of the affidavit of Jorge Acosta, one of the principals of Wall to Wall, which the jury would have a reasonable basis for discrediting. Indeed, there is uncontroverted evidence that the principals of Wall to Wall were engaged in a conspiracy to defraud the Internal Revenue Service by deliberately concealing and understating Wall to Wall's gross income. Under these circumstances, the fact that Josendis was unable to come forward with "admissible evidence concretely

58

establishing the true measure of Wall to Wall's gross sales per year," Maj. Op. at 49, should not justify granting Wall to Wall's motion for summary judgment.

## I.

I begin with a discussion of the overtime wage provision, namely, whether Wall to Wall had gross sales of at least $500,000. Wall to Wall failed to produce any of its financial records for the years 2006 to 2008, "save for the 2006 tax return and a financial summary prepared by Acosta in preparation for a separate FLSA lawsuit previously filed against Wall to Wall." *Id.* at 19 n.21. Jorge Acosta stated in support of the defendants' motion for summary judgment that no tax returns were prepared for 2007 (or, apparently, for 2008). Acosta Decl. ¶ 4. Moreover, in an unsworn response to a document request, he alleged (in the words of the majority opinion) that, "[*a*]*t some point after the initiation of Josendis's suit* [on July 25, 2008], Wall to Wall had been evicted from its office for not paying rent. Once the property owner reentered the premises, Wall to Wall's business records were placed on the street. Neither Acosta nor Lim rescued those records, and they were lost forever." Maj. Op. at 19 n.21 (emphasis added). Nevertheless, the majority opinion finds that Wall to Wall "complied with the court's instructions [ordering the production of these documents] and completed, to the best of its ability, the ordered discovery." *Id.* at 19. Moreover, the majority goes on to

suggest—in the face of Wall to Wall's admission that its business records "were lost forever"—that "Josendis might have obtained a corporate ledger indicating that Wall to Wall made at least $500,000 in 2006, 2007, or 2008." *Id.* at 49 n.40.

While Wall to Wall's explanation for its failure to produce its financial records is more imaginative than blaming it on a fire, I find it difficult to accept. Nor am I willing to fault Josendis for not producing documents that Wall to Wall, by its own admission, failed to preserve and allowed its landlord to dispose of as garbage. More importantly, a jury could conclude that the documents were either destroyed or not produced because they would have shown that Wall to Wall in fact had at least $500,000 in gross sales. Indeed, the majority opinion alludes to the doctrine of spoilation, pursuant to which "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Id.* at 30 n.28 (internal quotation marks omitted). Nevertheless, the majority opinion suggests that it was up to Josendis to "have moved the district court to consider the destruction of Wall to Wall's corporate records as a bad faith act of spoilation," and that "[a]bsent a finding of spoilation, we cannot hold against Wall to Wall the loss of its financial records." *Id.*

The doctrine of spoliation permits the trier of fact to draw an inference that, if records were destroyed in bad faith, it was done so to impede the opposing party from obtaining evidence that would support the latter's position. More specifically, it provides a basis for denying a motion for summary judgment where there is sufficient probative evidence for a jury to find an act of spoliation and to draw the inference derived from such an act. Thus, in *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (per curiam), we agreed with the district court that "there was no probative evidence in this case to indicate appellees purposely lost or destroyed the relevant portion of the [evidence]." Consequently, we concluded that the district court had not erred in rejecting the adverse inference and granting the motion for summary judgment. *Id.* By contrast, in *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998), a case in which this inference turned on the veracity of the defendants' explanation for the destruction of relevant documents, "the district court presumed for purposes of considering the motion for summary judgment that defendants had an obligation to preserve the files and that the destruction was intentional," and this approach was characterized as "sound" by the Second Circuit. A factual finding of spoliation is necessary only where the district judge seeks to impose a particular sanction beyond submitting the issue to the jury.

Nevertheless, I accept, for present purposes, the majority's suggestion that, without a finding of bad faith by the district judge, we are precluded from considering whether Wall to Wall's failure to produce its financial records supports an inference that would preclude summary judgment. The absence of those records, however, is not without consequence. The principal source of admissible evidence concerning Wall to Wall's gross sales was the company's own financial records. Because those apparently no longer exist, the evidence upon which the district court and the majority opinion conclude that Wall to Wall ought to prevail on summary judgment is the declaration of the principal alleged wrongdoer, Acosta, that Wall to Wall did not have at least $500,000 in gross sales in the years relevant to this lawsuit. This consideration, along with the inability of Josendis to obtain the relevant records, has a significant impact on the application of principles relating to summary judgment.

We have previously held that,

[i]n applying the basic principles [governing summary judgment,] the factor of access to proof must . . . be seriously considered in ruling on a defendant's motion for summary judgment, particularly . . . where plaintiff's proof must come mainly from sources largely within the control of the defendants and from the mouths of the alleged wrongdoers.

*Ala. Farm Bureau Mut. Cas. Co., Inc. v. Am. Fidelity Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979) (quoting 6 *Moore's Federal Practice* P 56.17(60) at 56-1065

62

(1976 ed.)).[1]  Consequently, "[s]ummary judgment should not . . . ordinarily be granted before discovery has been completed."  *Id.*  In the present case, discovery has not been completed because of the destruction of the most relevant evidence necessary for Josendis to establish his case and because the district court improperly constricted the scope of discovery.  Thus, to cite one example, the district judge denied Josendis's request to discover "[a]ll of the income reporting documents submitted by [Wall to Wall] to the Internal Revenue Service regarding the Plaintiff for [three calendar years prior to the filing of Josendis's original complaint on July 25, 2008 (the 'relevant period of time')]."  Maj. Op. at 27 (second and third alterations in original).  The majority finds no abuse of discretion in this ruling because the request was "arguably irrelevant" in a case in which the issue is the amount of the gross sales that Wall to Wall engaged in during those years.  *Id.* at 31.  Nevertheless, I decline to get involved in a nitty-gritty discussion of the various discovery rulings because, in the end, Josendis would never have obtained these documents, since Acosta had allowed them to be trashed.

This brings me to the second aspect of the relevant rule regarding the propriety of granting summary judgment in a case such as this.  As Professors Wright, Miller, and Kane observe, "[t]he party opposing summary judgment does

---

[1] We have adopted as binding precedent the decisions of the Fifth Circuit decided before October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

63

not have a duty to present evidence in opposition to a motion under Rule 56 in . . . circumstances . . . when there is an issue as to the credibility of the movant's evidentiary material." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727, at 480, 485 (3d ed. 1998). As described by one commentator, the question of when the burden will shift to the party opposing summary judgment depends on the type of proof used by the moving party:

> Thus if the proof in support of the motion is largely documentary and has a high degree of credibility the opponent must produce convincing proof attacking the documents in order to sustain his burden . . . . If the moving party's proof is less convincing, as in cases where he relies on his own testimony or has exclusive knowledge of the transaction, the burden of providing evidence may never shift to the opponent.

John A. Bauman, *A Rationale of Summary Judgment*, 33 Ind. L.J. 467, 483-84 (1958) (alteration in original) (quoted in Wright, Miller & Kane, *supra*, at 486). Indeed, we have held that "[c]ases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, *as are those in which the issues turn on the credibility of the affiants*." *Ala. Farm Bureau Mut. Cas. Co.*, 606 F.2d at 609 (emphasis added) (quoting *Slavin v. Curry*, 574 F.2d 1256, 1267 (5th Cir. 1978)). As Judge Frank observed in one of the leading cases on this issue,

> where . . . the facts asserted by movant are peculiarly within the knowledge of the movant, then the opponent must be given the opportunity to disprove that fact by cross-examination and by the demeanor of the movant while testifying. In such a case—a case like the one before us—the failure of the opponent to file a counter-affidavit has no significance.

*Subin v. Goldsmith*, 224 F.2d 753, 760 (2d Cir. 1955); *see also Ala. Great S. R.R. Co. v. Louisville & Nashville R.R. Co.*, 224 F.2d 1, 5 (5th Cir. 1955) (describing *Subin* as "a thorough going exposition of why a summary judgment should, and should not, be granted"); *Shahid v. Gulf Power Co.*, 291 F.2d 422, 424 (5th Cir. 1961); Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.").

A corollary of this principle is the long-recognized prerogative of the jury to disbelieve the testimony of a party and conclude that the opposite of his testimony is true. Judge Learned Hand's oft-quoted observation, which has been echoed by the Supreme Court, *NLRB v. Walton Mfg. Co.*, 369 U.S. 404, 408 (1962) (per curiam); *Wright v. West*, 505 U.S. 277, 296 (1992), is particularly apposite here. Specifically, Judge Hand observed that demeanor "evidence may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be

uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies." *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952); *see also NLRB v. Dixie Gas, Inc.*, 323 F.2d 433, 435-36 (5th Cir. 1963). Indeed, even in a criminal case, where a defendant cannot be forced to testify, we have held that

> a statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt. . . . To be more specific, we have said that, when a defendant chooses to testify, he runs the risk that if disbelieved "the jury might conclude the opposite of his testimony is true."

*United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (quoting *Atkins v. Singletary*, 965 F.2d 952, 961 n.7 (11th Cir. 1992)); *see also West*, 505 U.S. at 296. There is, to be sure, the caveat that the jury's disbelief alone may be insufficient by itself to justify a conviction in a criminal case or a verdict in favor of the opposite party in a civil case; some corroborative evidence may be required to support the verdict. *Waffenschmidt v. MacKay*, 763 F.2d 711, 724 (5th Cir. 1985); *United States v. Marchand*, 564 F.2d 983, 985-86 (2d Cir. 1977). Indeed, notwithstanding his observation about the significance of demeanor evidence, Judge Hand observed that a verdict in favor of the plaintiff solely on the basis of its disbelief of the defendant would not be sufficient to justify a judgment in his favor. *Dyer*, 201

66

F.2d at 269. Nevertheless, the foregoing caveat is inapplicable if independent evidence supports the inference that the truth is the opposite of the facts to which a party witness testified. *See United States v. Spencer*, 129 F.3d 246, 251 (2d Cir. 1997) ("The rule in *Dyer* is inapplicable if independent evidence supports the government's case."); *see also United States v. Eisen*, 974 F.2d 246, 262 & n.6 (2d Cir. 1992).

In my view, a reasonable jury could conclude that Jorge Acosta is not worthy of belief and that the opposite of his testimony is, in fact, true. Passing over the fact, to which I've already alluded, that Wall to Wall concededly allowed its records to be trashed after the commencement of this lawsuit and failed to come forward with so much as a sworn affidavit explaining the circumstances regarding its failure to produce those records, Josendis came forward with substantial evidence to support his claim. Specifically, the affidavit of Josendis, as well as those of Troy Allan Whitten and Willard Dulanto, *see* R 37, provide an ample basis for concluding that Wall to Wall must have been, like many such construction enterprises (which also often employ illegal aliens), an on-and-off-the-books operation and that Acosta was engaged in a blatant scheme to defraud the IRS. These affidavits, which are based on personal knowledge, and which are not controverted by Wall to Wall, establish that, for a period of time in 2007, Wall to

Wall employees (including Whitten) worked only at the Miami Jewish Hospital ("MJH"). Acosta told Whitten that the MJH "wanted him to repair all 101 apartments" at the facility. Moreover, based on what Jorge Acosta told Whitten, "Wall to Wall Residences was paid between thirteen and fourteen [thousand dollars] ($13,000-$14,000) per unit." Acosta asked Whitten to pick up the checks, which were usually in a closed envelope. Acosta instructed him to open the envelope to verify that the amount written on the check was correct. More significantly, Whitten "noticed that the checks were made out to Jorge Acosta."

This was not the only instance that Whitten noticed of checks made out to Jorge Acosta and his wife. Whitten's affidavit also attested to the fact that "Acosta also instructed customers to write checks to [Whitten's] name (for work done by Wall to Wall). [Whitten] would cash the check and then give the cash to Acosta." This occurred at least "two or three times monthly." Finally, "Acosta would also write company checks directly to [Whitten] for one or two thousand dollars and then [Whitten] would cash the checks [at a check cashing store] and give the cash to Acosta." The check cashing store was identified in the affidavit. Although the affidavit of Willard Dulanto was not as detailed, he nevertheless confirmed the work at the MJH from 2007 to 2008 and expressly stated he had been given a check for $11,000 in a closed envelope, which he saw was made out to Acosta.

The contents of the verified amended complaint, which are set out on page 13 of the majority opinion, are also entirely consistent with these two affidavits. The combination of the three, in the words of the majority opinion, "establishes that Wall to Wall potentially earned $56,000 for one job in 2007; approximately $120,000 for kitchen remodels also in 2007; $5,000 for an unknown project at an unknown date; and about $434,000 for work at the Miami Home over a two-year period in 2007 and 2008." Maj. Op. at 49. Nevertheless, the majority concludes that, because "Josendis and Whitten did not ground their projections in admissible evidence concretely establishing the true measure of Wall to Wall's gross sales per year, nor did they explain how they came to their *belief* that Wall to Wall had earned $500,000 in any one of the relevant years, we cannot accept their word on the matter." *Id.* While the majority opinion may be correct in its suggestion that the affidavits are not based on "admissible evidence concretely establishing the true measure of Wall to Wall's gross sales per year," the reason for this is that Wall to Wall failed to retain required financial records.

Moreover, there is also evidence that Acosta submitted a false declaration in this case, alleging that he fired Josendis after learning that Josendis was an illegal alien. Acosta Decl. ¶ 6. A letter he wrote to Josendis, however, clearly indicates that such a termination did not occur for the reasons alleged by Wall to Wall.

69

R 23, Josendis Aff., Ex. A. Indeed, when pressed at oral argument, Wall to Wall's counsel grabbed onto the life preserver that a member of the panel generously tossed him by conceding that, at the very least, this was an issue of fact.

Under these circumstances, a jury would be perfectly justified in returning a verdict in favor of Josendis based on a finding (1) that Wall to Wall generated substantial revenues, (2) that Acosta and his wife were both engaged in a scheme to defraud the IRS, which included conduct that caused the earnings of Wall to Wall to be significantly understated, and (3) that Acosta was a liar and that the opposite of his testimony was true. These inferences become even more compelling because of Wall to Wall's inability to produce its own financial records. And this is so whether or not the jury believed the preposterous claim, assuming Acosta was willing to testify to it under oath, that his former landlord carried the documents to the street (after Josendis filed his complaint) from which they disappeared forever.

## II.

I turn now to the first prong of 29 U.S.C. § 203(s)(1)(A), which requires that, in addition to gross sales of at least $500,000, the enterprise use goods or materials that had once moved in interstate commerce. Specifically, relying on *Flores v. Nuvoc, Inc.*, 610 F. Supp. 2d 1349 (S.D. Fla. 2008), Wall to Wall invoked

the "coming to rest" doctrine, according to which, "[w]here the enterprise acquired from within the state the goods or materials used by its employees and has no role in causing goods or materials to move in interstate commerce to employees for their use in the business, enterprise coverage is not triggered." Br. at 26 (quoting *Flores*, 610 F. Supp. 2d at 1354). The problem with this argument is that we explicitly rejected it in *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217 (11th Cir. 2010) (per curiam), which decided six cases consolidated for appeal, including one in which Wall to Wall was a defendant, *Vallecillo v. Wall to Wall Residence Repairs, Inc.*, 595 F. Supp. 2d 1374 (S.D. Fla. 2009). In the course of describing the district court holding in *Vallecillo*, we observed that "[b]ecause one of [the] uncontested facts was that Defendants *bought* all materials from local retailers, the district court [erroneously] concluded that there was no commerce as defined in the FLSA." *Polycarpe*, 616 F.3d at 1227 n.10. The Acosta declaration in this case, which presumably mirrors the one he filed in *Vallecillo*, says no more than that Wall to Wall "purchased tools and supplies from local retailers (primarily Home Depot) in South Florida. We have never bought or sold anything across state lines." Acosta Decl. ¶ 2. This declaration is no more adequate here than it was in *Vallecillo* to justify summary judgment for Wall to Wall on this premise. *See Polycarpe*, 616 F.3d at 1227 n.10.

71

While the majority does not reach the merits of this claim, because it concludes that Josendis failed to satisfy the $500,000 element of the FLSA's overtime wage provision, I would not address the issue for a different reason. Wall to Wall opened its brief on appeal here with an expression of its "desire to adopt the Brief submitted in *Vallecillo v. Wall to Wall Residence Repairs, Inc.*, Case No. 08-22271-CIV-ZLOCH." Br. at viii. Nevertheless, it failed to call to our attention the ultimate decision in the *Polycarpe* case, which vacated the district court decision in *Vallecillo*, and is clearly adverse to Wall to Wall in this case. Nor did Wall to Wall seek a remand to the district court for consideration of the argument the majority raises *sua sponte*, namely, whether the term "materials" in the FLSA means "tools or other articles necessary for doing or making something." Maj. Op. at 51 (quoting *Polycarpe*, 616 F.3d at 1223-24). The failure of Wall to Wall to do so is not surprising, since it is inconceivable that a construction company would not be using materials, for the purpose of "doing or making something," that previously moved in interstate commerce. Under these circumstances, I would reverse the order granting Wall to Wall's motion for summary judgment without addressing the issue.

III.

72

I recognize that the result for which I have argued would require us to reach the issue whether Josendis, an illegal alien, is entitled to the protection of the FLSA. I agree with the position expressed in the letter brief submitted by the Solicitor of the United States Department of Labor, which we requested, that "undocumented workers are entitled to recover minimum wages and overtime pay for hours worked under the FLSA," DOL Letter at 10, as another panel of the Eleventh Circuit recently held in an unpublished opinion, *Galdames v. N & D Inv. Corp.*, Nos. 10–11984, 10–14523, 2011 WL 2496280 (11th Cir. June 23, 2011) (per curiam), following Eleventh Circuit precedent, *Patel v. Quality Inn South*, 846 F.2d 700 (11th Cir. 1988). Nor would a contrary result deter illegal aliens seeking employment in the United States. Instead, denying them the protection of the FLSA would only encourage employers to hire illegal aliens, as opposed to citizens, because in so doing employers could avoid the expense of complying with the FLSA. Such a result is contrary to public policy and, for that reason alone, we should reject Acosta's suggestion that we decline to follow binding precedent on this issue.[2]

---

[2] The majority also affirms the imposition of sanctions in the amount of $330 against Josendis's attorney for fees incurred by Wall to Wall in opposing Josendis's discovery demands. This is a result with which I also disagree. In my view, Wall to Wall forfeited any right to sanctions because of the misconduct that it engaged in by making no effort to preserve critical business records and allowing them to be treated as garbage by its landlord—assuming anyone believes this unsworn and fanciful explanation. Indeed, if any sanctions are warranted in this case, the

## IV.

The judgment of the district court should be reversed, and the case should be remanded for trial.

<div style="border-top: 1px solid black; width: 30%;"></div>

district court should have imposed sanctions on the defendants and not on Josendis's attorney.