[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11955
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 9, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cv-03584-CC


ALEXIS ANTONIO WHITE,

                                                      Plaintiff - Appellant,

                        versus

THE CITY OF ATLANTA,
a Municipal Corporation of the State of Georgia,
d.b.a. Atlanta Police Department,
SCOTT E. DUNCAN,

                                                      Defendants - Appellees,

JOHN DOE 1, et al.,

                                                      Defendants.

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(December 9, 2011)

Before HULL, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Alexis White appeals the summary judgment against his complaint about the violation of his civil rights by the City of Atlanta and Officer Scott E. Duncan. Duncan interviewed White after he had conspired with three corrupt police officers, Gregg Junnier, Jason Smith, and Arthur Tesler, to corroborate a false affidavit and to conceal their unfounded search of a home for drugs that resulted in the death of homeowner Kathryn Johnston. White complained that he was falsely imprisoned during Duncan's interview, 42 U.S.C. § 1983, and that the officers and the City conspired to coerce White to conceal the illegal activities, id. § 1985(2), and violated state law. After the district court dismissed Junnier, Smith, and Tesler, Duncan and the City moved for summary judgment. The district court ruled that White failed to establish that he was falsely imprisoned or that Duncan or the City were parties to an illegal conspiracy, and the district court dismissed without prejudice White's claims under state law. We affirm.

White argues that a genuine factual dispute exists about whether he was falsely imprisoned by Duncan, but White's trial testimony contradicts his argument. During Tesler's trial, White testified that he agreed to meet Duncan and climbed into his vehicle because he did not want to be seen "talking to the police" because "it isn't something you do." White argues that he was unable to escape from Duncan's vehicle, but White testified that he was "just ask[ed] . . . questions" regarding the drug transaction at Mrs. Johnston's house during the "approximately eight minutes" that he contends he was wrongfully detained.

White also argues that a genuine factual dispute exists about whether Duncan conspired to violate his civil rights, but White failed to submit any evidence that Duncan even knew of the alleged conspiracy. White assumes that Duncan was involved based on evidence that the conspirators' supervisor, Lt. Stacy Gibbs, warned officers before field inspections to "clean out" their desks and police vehicles; Gibbs dispatched Duncan to question White; Junnier instructed White how to act when interviewed by Duncan; Smith gave White's contact information to Duncan; Duncan insisted that White view a photographic line-up at the police station before he met with Agent Eric Degree of the Bureau of Alcohol, Tobacco, and Firearms; and Duncan chased White after he fled Duncan's vehicle en route to the police station. White contends that "a rational trier of fact

3

might infer" from these facts that "Duncan was aware of the illegal goals of the conspiracy" and "shared the purpose of the conspiracy," but White's purported "'evidence,' consisting of one speculative inference heaped upon another, [is] entirely insufficient" to establish that Duncan joined the conspiracy. Josendis v. Wall To Wall Residence Repairs Inc., No. 09-12266, slip op. at 50 (11th Cir. Nov. 17, 2011). Viewed in the light most favorable to White, the record establishes that Gibbs was a corrupt supervisor, the corrupt officers prepared White to meet with Duncan, and Duncan questioned White and then pursued a material witness to complete his investigation.

White challenges on two grounds the judgment in favor of the City, but both of his grounds lack merit. First, White argues that the policies of the City caused the "conspira[tors] to violate [his] civil rights," but White failed to provide any "'direct causal link between'" the policies regarding arrest quotas and acceptance of fabricated warrants and the alleged coercion by the corrupt officers, Snow ex rel. Snow v. City of Citronelle, Ala., 420 F.3d 1262, 1271 (11th Cir. 2005) (quoting City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989)). Second, White argues that the City is liable under state law, but the district court declined to exercise supplemental jurisdiction over this argument and White does not challenge that decision.

White makes three other arguments, all of which are frivolous.  First, White lists as an issue that the "intracorporate conspiracy doctrine does not apply to claims arising under 42 U.S.C. Section 1985(2)," but White fails to identify an adverse ruling by the district court on this issue.  <u>See</u> Fed. R. App. P. 28(a)(9). Second, White argues that Duncan was not entitled to qualified immunity, but the district court did not reach that issue because it determined that White failed to produce any evidence that "Duncan reached an agreement with" the three corrupt police officers.  Third, White argues that Duncan was not entitled to official immunity for his alleged violations of state law, but Duncan does not challenge the dismissal without prejudice of these claims.

We **AFFIRM** the summary judgment in favor of Duncan and the City.