[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13384
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cv-00065-RS-CJK


DAVID RANDALL POLK,

Plaintiff – Appellant,

versus


JOE NUGENT,
in his official capacity as Sheriff of Gulf County,
FRANK MCKEITHEN,
RITA PIERCY,
TOM GODWIN,

Defendants - Appellees,


GLENN HESS,
in his official capacity as State Attorney for the
Fourteenth Circuit, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 24, 2014)

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

David Polk appeals the district court's order granting summary judgment as to his 42 U.S.C. § 1983 claims for malicious prosecution and violation of his right to due process against Frank McKeithen, former Sheriff of Gulf County, Florida, Officers Rita Piercy and Tom Godwin, along with the current Sherriff in his official capacity, based on their actions in connection with Polk's prosecution for the alleged rape of an eleven-year-old girl. After several months of discovery but before the deadline, the defendants moved for summary judgment. Polk moved under Federal Rule of Civil Procedure 56(d) for more time to complete discovery and sought relief from a protective order that limited his discovery with respect to two district attorneys who prosecuted him. The district court rendered summary judgment in the defendants' favor on each of Polk's federal claims, declined to exercise supplemental jurisdiction over his state claims, and denied his motions for further discovery. This is Polk's appeal.

## I.

In 1999, a friend at whose home Polk had been sleeping told police that Polk had raped his daughter. Investigators, including Officer Piercy, conducted a videotaped interview of the child, during which she described the encounter in excruciating detail. Officers Piercy and Godwin testified that, based upon their

experience, the level of detail and the alleged victim's demeanor during the interview led them to conclude she was telling the truth. During a sexual assault examination conducted at a hospital, however, doctors found no injuries or traces of Polk's bodily fluid, even though the child told authorities she had not bathed after the encounter. Police also collected bedding and clothing from the house where the alleged rape had occurred. Initially, no DNA from Polk was found, but tests revealed DNA from someone else on a quilt collected at the scene.

Apparently, neither the DNA report nor the medical examination report was turned over to Polk's counsel before he entered into a negotiated guilty plea with state prosecutors in early 2000. Although the DNA report was formally addressed to Sheriff McKeithen, he testified he never saw the report and that the evidence custodian, whom Polk did not name as a defendant, was charged under department practice with delivering it to the prosecuting attorneys and investigating officers. Officers Piercy and Godwin also testified that they did not recall ever seeing the report and that they understood department procedure to dictate that, once test results came back from the laboratory, the evidence custodian assigned to a case would forward them to the state attorney's office.

After he was convicted, Polk was sentenced to probation, and, after violating the terms of his probation, he was incarcerated. During his incarceration, Polk discovered the DNA tests from the quilt and ultimately succeeded in having his

conviction vacated.  Armed with new DNA evidence matching Polk from a second quilt recovered at the scene of the alleged rape, prosecutors instituted a second criminal action against Polk.  But in September 2008, a jury found him not guilty.

Polk filed suit against Sheriff McKeithen, Officer Piercy, and Officer Godwin in their individual capacities and the current Gulf County Sheriff in his official capacity.[1]  After several months of discovery, Polk sought on March 15, 2013, four days before the discovery deadline then in place, to schedule the depositions of the two assistant state attorneys who prosecuted him.  The defendants agreed with Polk to move for an extension of the discovery deadline, which the court granted.  But the defendants sought a protective order barring the attorneys' deposition based upon prosecutorial immunity, which the court also granted in part, limiting Polk to 10 written questions to each prosecutor.  Before the prosecutors could respond to the questions, however, the defendants moved for summary judgment.  Polk responded, contending the motion was premature and seeking under Federal Rule of Civil Procedure 56(d) additional time for discovery. Once he had the prosecutors' responses to his questions, Polk also filed a motion to compel, asserting these responses were inadequate.  A magistrate judge set the

---

[1] We are informed by the defendants that a new Sheriff has replaced Sheriff Joe Nugent and should be substituted by operation of law for any further proceedings.  *See* Fed. R. Civ. P. 25(d). Because there will be no further proceedings, we see no need for an order directing substitution in this case.

motion for a hearing, but two days later, weeks before the hearing, the district court granted summary judgment.

Polk appeals, raising several arguments. Chiefly, he contends the court erred in granting summary judgment and failed to consider the facts in his favor. In addition, he claims the court erred in restricting the discovery he could obtain from the assistant state attorneys who prosecuted him, in not permitting him further discovery before ruling on the defendants' motion, and in rendering summary judgment while his motion to compel was still pending.

II.

We review a grant of summary judgment *de novo*, construing the facts in the light most favorable to the non-moving party. *Dawkins v. Fulton Cnty. Gov't*, 733 F.3d 1084, 1088 (11th Cir. 2013). "All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Avenue CLO Fund, Ltd. v. Bank of Am., NA*, 723 F.3d 1287, 1294 (11th Cir. 2013) (internal quotation marks omitted).[2] We may affirm a district court's decision rendering summary judgment "on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court." *Kernel Records Oy v.*

---

[2] Because we review the judgment *de novo* based upon our own construction of the evidence, we need not specifically address Polk's claim the district court failed to treat the facts in the light most favorable to him.

5

*Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1810 (2013).

In a suit for damages under 42 U.S.C. § 1983 for a constitutional violation, government officials are immune for actions taken in their discretionary capacity unless the actions violated law that was clearly established at the time. *Wilkerson v. Seymour*, 736 F.3d 974, 977 (11th Cir. 2013). To be entitled to qualified immunity from a § 1983 malicious-prosecution claim, an officer need only have arguable probable cause. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 & n.25 (11th Cir. 2010). Under that standard, the defendant officers will be immune provided "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed . . . ." *Id.* at 1257 (internal quotation marks omitted).

We review the denial of a motion under Rule 56(d) for leave to conduct further discovery only for an abuse of discretion. *World Holdings, LLC v. Fed. Republic of Germany*, 701 F.3d 641, 649 (11th Cir. 2012), *cert. denied*, 134 S. Ct. 203 (2013). Likewise, a trial court has "wide discretion in setting the limits of discovery" through protective orders. *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 354 (11th Cir. 2012) (internal quotation marks omitted). Moreover, even if we conclude a court abused its discretion in limiting discovery, we will not reverse unless it is shown the error "resulted in substantial harm to the appellant's

case." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011) (internal quotation marks omitted).

### III.

We begin by defining what claims actually are at issue in this appeal. Polk, in his initial brief, asserts that "[t]his case concerns a 42 U.S.C. § 1983 civil rights false arrest and imprisonment and malicious prosecution . . . ." But Polk did not allege § 1983 false-arrest or false-imprisonment claims in his complaint, and he has never moved to amend the complaint to assert such claims. They are therefore not properly before us. *See Glenn v. U.S. Postal Serv.*, 939 F.2d 1516, 1523 (11th Cir. 1991) (stating a plaintiff "cannot assert for the first time on appeal a new claim not presented to the district court"). Polk did allege a § 1983 claim for deliberate indifference but does not make even passing reference to that claim in his brief — the words "deliberate indifference" never appear at all. Accordingly, we conclude Polk has abandoned that claim. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318-19 (11th Cir. 2012). Likewise, Polk offers no argument that the district court erred in declining to exercise supplemental jurisdiction over his state-law claims if the court correctly rendered summary judgment against his § 1983 claims. Thus, because we affirm the summary judgment as to Polk's federal claims, we perforce affirm the court's decision to dismiss his state-law claims.

Turning then to Polk's substantive § 1983 claims, we have little difficulty concluding the court correctly rendered summary judgment on the basis that Sheriff McKeithen and Officers Piercy and Godwin were entitled to qualified immunity.  As to the malicious-prosecution claim, we cannot say Polk has shown "no reasonable officer could have found probable cause under the totality of the circumstances" to believe a crime had been committed based on an eleven-year-old girl's videotaped statement describing in vivid and excruciating detail precisely how she was raped and by whom.  *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004); *see also Rankin v. Evans*, 133 F.3d 1425, 1440 (11th Cir. 1998) (concluding that victim's "statements supported probable cause").  That is so even though a physical exam failed to find physical evidence of the rape, one DNA test did not corroborate the girl's story, and she did not reiterate each of the many details every single time she told it.

Polk's claim that the officers never turned over the rape examination report and DNA test does not alter our conclusion, even if we assume the single passing mention of "due process" in Polk's initial brief as part of a quotation from a district court case to have adequately preserved that claim.  Although law enforcement officers have a clearly established duty not to "*conceal* exculpatory or impeachment evidence" from the prosecution in a criminal case, they have no clearly established duty to do anything with evidence "[i]f they have reason to

8

believe the prosecutor already has" it. *McMillian v. Johnson*, 88 F.3d 1554, 1567, 1569 (11th Cir. 1996) (emphasis added). Nothing in the record contradicts the defendants' testimony that they reasonably believed the evidence custodian would turn over any report from the state's crime laboratory directly to prosecutors or suggests they interfered with this process. Certainly, no evidence suggests they "intentionally withheld . . . exculpatory [or] impeachment evidence from the . . . prosecutor." *Id.* at 1566. Even were we to disregard that testimony, at most Officers Piercy and Godwin and Sheriff McKeithen did not follow up on whether evidence they placed in the case file and the results of the requested testing reached prosecutors. Law enforcement officers, however, have no clearly established constitutional duty to do so. *See Porter v White*, 483 F.3d 1294, 1308 (11th Cir. 2007) (recognizing no viable cause of action for "mere negligence or inadvertence on the part of a law enforcement official in failing to turn over [exculpatory or impeachment] evidence to the prosecution"). They only have a clearly established duty not to have prevented prosecutors from having access to it. *See id.* at 1304 n.5 (stating that, "*if* the officials *intentionally* withheld what they knew to be [exculpatory] material, *then* they violated clearly established law," but recognizing it not clearly established during the relevant time that "less-than-intentional conduct would suffice").

9

Polk argues on appeal that his official-capacity claim may stand even if we decide the individual officer defendants are entitled to qualified immunity. Although that may be a correct statement of the law, there is no such claim before us because Polk never pleaded any of the federal claims he has preserved on appeal against any official-capacity defendant. In the operative complaint, the captions for the § 1983 malicious prosecution, due process, and conspiracy counts expressly name *only* Sherriff McKeithen, and Officers Piercy and Godwin, and in those counts Polk pleaded no facts regarding a policy or practice that would serve as a basis for official-capacity liability. *See Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) ("When suing local officials in their official capacities under § 1983, the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom."). The only federal claim that Polk pleaded against the current Sheriff in his official capacity was one for deliberate indifference, a claim he has, as we previously noted, abandoned.

Having concluded they are entitled to qualified immunity for their actions, we must necessarily affirm summary judgment as to Polk's conspiracy claim against Sheriff McKeithen and Officers Piercy and Godwin (the only defendants against whom the claim is pleaded). A plaintiff "cannot state a valid conspiracy

claim by alleging the Defendants conspired to do things they already are immune from doing directly." *Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010).

Finally, the district court did not abuse its broad discretion by denying Polk's motion for further discovery, restricting Polk's discovery against the state attorneys who prosecuted him, and granting judgment before ruling on his motion to compel. *See Liese*, 701 F.3d 334 at 354.   There is no "blanket prohibition on the granting of summary judgment motions before discovery" is fully complete. *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989).   And the only evidence Polk claims may have precluded summary judgment is his speculation that deposing his prosecutors might have uncovered that they agreed with investigators to withhold certain pieces of evidence from him.   Because the officers had enough evidence even with the purportedly withheld reports for arguable probable cause and did nothing to affirmatively prevent prosecutors from accessing that evidence, nothing that may have been uncovered in the deposition could have changed the outcome in this case.   Accordingly, any error in unfairly restricting Polk's access to additional discovery before rendering summary judgment was harmless.   *See Josendis*, 662 F.3d at 1307.

## IV.

For the foregoing reasons, we find any error in the denial of Polk's motion for further discovery and imposition of limits on Polk's discovery against the state

11

attorneys who prosecuted him was harmless, and we affirm the district court's

entry of summary judgment against Polk's federal claims and dismissal of his state

claims.

**AFFIRMED**.