[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10530
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cv-00059-TCB

CEDRIC LASHAWN WARNER,

Plaintiff-Appellant,

versus

JEREMY WOOD,
in his individual and official capacity as a
Police Officer for the City of Newnan,
JOHN DOE 1-20,
in their individual and official capacities,

Defendants-Appellees,

NEWNAN POLICE DRUG UNIT, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 31, 2018)

Before TJOFLAT, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

In this civil lawsuit, Plaintiff Cedric Warner appeals the district court's order granting summary judgment to Defendant Officer Jeremy Wood. Warner's suit is based on his claim that Officer Wood fabricated evidence of cocaine. The district court concluded that Warner relied on speculation and had not presented any evidence, direct or circumstantial, that Officer Wood fabricated evidence. After careful review of all record evidence, we affirm.

## I.  BACKGROUND

### A.  Application for Search Warrant

Officer Wood received several complaints from neighbors that Warner was selling drugs out of his home and conducted a controlled purchase of cocaine at Warner's home. Thereafter, Officer Jeremy Wood of the Newnan, Georgia Police Department ("Police Department") applied for a warrant to search Warner's home. In his application, Officer Wood noted that he had surveilled Warner's home and observed "subjects going into [Warner's home,] staying for 2 to 3 minutes at a time and leaving." Officer Wood opined that, based on his experience as a narcotics investigator, this activity was consistent with the sale of drugs.

In his application, Officer Wood also stated that, in mid-August 2013, he had arranged for a confidential informant to go to Warner's home and attempt to

2

purchase drugs from Warner.  Under Officer Wood's direction, the informant went to Warner's home and purchased a white, rock-like substance from Warner, which field-tested positive for cocaine.  On August 14, 2013, a Coweta County, Georgia Magistrate Court Judge granted Officer Wood's application and issued a search warrant for Warner's home.

## B.  Execution of Search

At 8 p.m. on Wednesday, August 21, 2013, five law enforcement officers of the Police Department, including Officer Wood, executed a search warrant at Warner's home.  The officers found Warner in a detached garage with four other people.  In the detached garage, the officers found partially-smoked marijuana cigarettes and loose marijuana.

The officers then proceeded to search Warner's home while Warner waited in the detached garage.  In Warner's kitchen, the officers found digital scales and several empty, clear plastic bags.  The officers also found loose marijuana on top of a coffee maker in Warner's kitchen and in a kitchen drawer.

When one of the officers looked inside the black coffee maker, he discovered a small, white, rock-like substance that he believed to be crack cocaine. The officer alerted Officer Wood, who photographed the white, rock-like substance as it was found in the coffee maker before placing it in a sealed evidence bag.  Warner included a copy of that photograph in his complaint.  Officer Wood

3

did not field test the substance.  The officers then arrested Warner, who was still in the garage, and told him that he was being charged with possession of cocaine and marijuana, and took him to the Coweta County jail.

The officers then spent the next several hours completing their search of Warner's home.  Since the search began at 8 p.m., this means that the officers were at Warner's home until at least 10:00 p.m.

Before his shift ended for the night, Officer Wood drove to a Police Department building that was a satellite location.  The satellite location was about a mile away from the Police Department's main headquarters.  In his deposition, Officer Wood testified that it was late at night when the search ended and that Police Department officers often stored evidence in the satellite location if the evidence was found late at night.  Officer Wood placed the sealed evidence bag containing the substance found in Warner's coffee maker into a locked file cabinet at the satellite Police Department building.  Officer Wood frequently used this location to store drugs purchased by confidential informants from area drug dealers.

Sergeant Mark Cooper corroborates Officer Warner's account.  Sergeant Cooper helped Officer Wood search Warner's home and later accompanied Officer Wood when he went to the satellite location.  Sergeant Cooper testified that he watched Officer Wood remove the substance from Warner's coffee maker, place

4

the substance into an evidence bag, and seal the evidence bag.  Once the search concluded, Sergeant Cooper went with Officer Wood to the satellite building and watched Officer Wood place the evidence bag containing the substance into the locked file cabinet.  Sergeant Cooper testified that only he and Officer Wood had keys to the file cabinet wherein Officer Wood placed the evidence bag containing the substance.  Sergeant Cooper also testified that he and Officer Wood returned to the satellite location on the following day, on August 22, 2013, to retrieve the evidence bag containing the substance and transported it to the Police Department's evidence locker at the main headquarters.

At the time of Warner's arrest on Wednesday, August 21, 2013, the Police Department's evidence policy stated that any officer who collects physical evidence from a crime scene must transport that evidence to the Police Department's evidence custodian prior to the end of the officer's shift.  See Newnan Police Department Evidence and Property Policy §§ III(A)(1), (3), (5); Newnan Police Department Evidence Policy § IV(A)(3).  The Police Department's evidence locker is located at its main headquarters at 1 Joseph-Hannah Boulevard, Newnan, Georgia, also about one mile from Warner's home.

Officer Wood submitted the evidence bag with the substance to the Police Department's evidence custodian at the Police Department's headquarters on

5

August 23, 2013.[1]  The evidence custodian then sent the substance to the Georgia

Bureau of Investigation ("GBI") for testing.

## C.  GBI Testing

On September 23, 2013, the GBI issued a report concluding that the

substance submitted in the sealed evidence bag tested positive for cocaine.  The

GBI report states that the weight of the cocaine was "less than 1 gram."

On December 3, 2013, the District Attorney's Office for the Coweta Judicial

Circuit charged Warner with two offenses: (1) possession of cocaine, in violation

O.C.G.A. 16-13-30(a), and (2) possession of marijuana with intent to distribute, in

violation O.C.G.A. 16-13-30(j).

## D.  Warner's Criminal Case

On January 29, 2014, Warner was arraigned, and Jermario Davis was

appointed as his attorney.  Attorney Davis subsequently met with Warner and

Warner's wife, LuVester Ann Evans, to prepare for Warner's criminal trial.  When

Davis explained to Warner that he was charged with possession of cocaine, Warner

and Evans adamantly denied the charge.  Evans told Attorney Davis that the

substance found in the coffee maker was an 800-milligram pill of ibuprofen that

---

[1]Officer Wood and Sergeant Cooper testified that they submitted the evidence bag to the evidence custodian the next day, on August 22, 2013.  But the chain of custody paperwork on the evidence bag lists August 23, 2013 as the submission date.  Because we review the facts in the light most favorable to Warner, we assume that Officer Wood and Sergeant Cooper submitted the evidence bag on August 23.

was broken in half, not crack cocaine.  Evans explained to Davis that she routinely stored items in the coffee maker, as neither she nor her husband used the coffee maker very often.  Evans stated that she placed half of the ibuprofen pill in the coffee maker after taking the other half for pain relief, as taking a full ibuprofen pill would have made her nauseous.

Attorney Davis then showed Warner and his wife several evidence photographs, including the photograph taken by Officer Wood of the substance sitting inside the coffee maker.  After looking at the photograph himself, Davis noticed that the substance did not resemble crack cocaine based on his experiences as a criminal defense attorney and a state prosecutor.

On April 11, 2014, Attorney Davis met with Tracy Reeves, the Coweta County assistant district attorney prosecuting Warner's case, and the Police Department's evidence custodian at Police Department headquarters.  During the meeting, the Police Department's evidence custodian retrieved the evidence bag containing the substance tested by the GBI.  Davis and Reeves then compared (1) the photograph that Officer Wood took of the substance while in the coffee maker with (2) the evidence bag containing the substance that was tested by the GBI.  Davis opined that the substance in the photograph of Warner's coffee maker and the substance in the evidence bag appeared to be different from one another in shape, texture, and color.  Davis noted that the substance in the coffee maker in

7

Officer Wood's photograph was one solid mass, bright white in color, and appeared to have a smooth, rounded shape, while the substance in the evidence bag consisted of two, yellow masses with "rigid" sides. Davis took several photographs of the evidence bag.[2] Then the Police Department's evidence custodian took the evidence bag containing the substance back to the evidence locker.

Attorney Davis' photographs of the evidence bag show two small pieces, which the GBI report states weighed less than one gram and tested positive for cocaine.

Before the meeting ended, Attorney Davis asked Prosecutor Reeves if he also noticed that the substance in the photograph and the substance in the evidence bag differed in appearance. Reeves did not acknowledge any differences.

Roughly an hour and a half after the meeting ended, Prosecutor Reeves called Attorney Davis and told him that he would dismiss the cocaine charge against Warner if Warner would plead guilty to misdemeanor possession of marijuana, a lesser included offense of his marijuana with intent to distribute charge. Attorney Davis informed Warner of Prosecutor Reeves' offer, which Warner accepted.

---

[2]Both Officer Warner's photograph of the substance in the coffee maker and Davis' photographs of the evidence bag are in the record.

Prosecutor Reeves testified that he did not see any indication that the substance in the evidence bag was different from the substance found in Warner's coffee maker, or that any evidence had been tampered with or fabricated. Notably too, Reeves testified that he was not surprised by any differences in appearance between the substance found in the coffee maker and the substance in the evidence bag, as cocaine typically begins to degrade over time and can look different after it is tested. Reeves also explained that his plea offer to Warner was not based on any problems with the evidence and that if he had believed that there was any fabrication or similar unethical conduct, he would have dismissed the entire case against Warner.

On April 14, 2014, Warner pled nolo contendere to misdemeanor possession of marijuana. That same day, the District Attorney's Office for the Coweta Judicial Circuit filed a motion to enter nolle prosequi on Warner's cocaine possession charge.

**E.  Civil Lawsuit**

Almost two years later, on April 8, 2016, Warner filed this civil lawsuit against Officer Wood in his individual capacity.[3] In his complaint, Warner alleged

---

[3]Although Warner also sued Wood in his official capacity, Warner failed to advance any arguments concerning his official capacity claims against Officer Wood. See generally Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037–38 (1978) (explaining that a plaintiff who sues an officer in his official capacity is really pleading an action against the entity for whom the officer is an agent and must identify a custom or policy implemented by the entity in order to advance his suit). Warner has therefore abandoned those claims, and we devote no

that the officers had found a one-half pill of ibuprofen in the coffee maker and Officer Wood then fabricated and withheld evidence against him by swapping the ibuprofen taken from Warner's coffee maker with crack cocaine. Warner advanced these claims against Officer Wood: (1) violation of his substantive due process rights under the Fourteenth Amendment (Count One); (2) violation of his right of access to the courts under the Fourteenth Amendment (Count Two); and (3) fraud and misrepresentation, conspiracy to commit fraud and misrepresentation, intentional infliction of emotional distress, and malicious prosecution (Counts Three, Four, Five, and Six, respectively), all under state law.

On January 16, 2018, the district court granted Officer Wood's motion for summary judgment. The district court found that Warner failed to produce affirmative evidence in support of his fabrication claims and instead relied only on Warner's own speculation. The district court discussed Evans' testimony about the substance found in Warner's coffee maker. The district court explained that, even if Evans had at one time placed ibuprofen in the coffee maker, she was not present

discussion to them. Cont'l Tech. Servs., Inc. v. Rockwell Int'l Corp., 927 F.2d 1198, 1199 (11th Cir. 1991) (per curiam) ("An argument not made is waived . . . .").

Warner's complaint also named as defendants the Newnan Police Drug Unit, the Coweta County Crime Suppression Unit, and twenty unnamed Newnan police officers in his complaint. On May 26, 2016, the district court dismissed the complaint against the Newnan Police Drug Unit. On January 30, 2017, the district court granted judgment on the pleadings in favor of the Coweta County Crime Suppression Unit. Warner did not appeal those rulings. Warner also failed to identify and serve the twenty unnamed defendants in the two years since he filed his complaint. Thus, the only remaining defendant is Officer Wood in his individual capacity.

10

the night of the search, and therefore her testimony does not confirm that the substance in the coffee maker that night was ibuprofen.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment <u>de novo</u>. <u>Melton v. Abston</u>, 841 F.3d 1207, 1219 (11th Cir. 2016). Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). When deciding a motion for summary judgment, it is not part of the district court's function to decide questions of material fact, but rather to determine whether there are fact questions for a jury to answer. <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). A district court must not weigh the evidence in question and decide the truth of the matter. <u>Anderson</u>, 477 U.S. at 249, 106 S. Ct. at 2510. When conflicts do arise between the facts evidenced by the parties, the district court must credit the nonmoving party's version. <u>Feliciano v. City of Miami Beach</u>, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting <u>Evans v. Stephens</u>, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc)).

### III.  DISCUSSION

The issue presented in this appeal is whether Warner's evidence has created a genuine factual dispute from which a jury might return a verdict in his favor— namely, that the officers during the search found ibuprofen in the coffee maker and later Officer Wood swapped the ibuprofen with crack cocaine.  We believe that Warner has not made this showing because Warner has no affirmative evidence to support his fabrication claim.  Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1318 (11th Cir. 2011) (explaining that "[u]nreliable conjecture . . . presented as a 'belief' without any basis in ascertainable fact, [is] not the type of admissible evidence required to survive a motion for summary judgment" (internal quotation marks omitted)).

Warner admits that when the officers came to execute the search warrant, (1) he was in his detached garage watching television and hanging out with four other people; (2) he was arrested in the garage; (3) he did not see what the officers took out of the coffee maker in the house because he was in the garage the entire time; (4) his wife Evans was not at the house when the search warrant was executed; and (5) on that day he did not ever see what was in the coffee maker. Warner also did not know how the substance was taken from his house, such as whether it went into an evidence bag or was taken in open form.  The bottom line is that Warner has no personal knowledge of what the officers took from the coffee

maker, as he was in the garage during the search of his house and never saw the substance when it was found by the officers in his kitchen.[4]

This leaves Evans' affidavit that she had put one-half of a pill of ibuprofen in the coffee maker. Evans' affidavit, however, does not state when—the time or even the day—she placed the ibuprofen in the coffee maker. Moreover, Evans was not at the house when the officers conducted their search. Thus, Evans also did not see what the officers took out of the coffee maker that day.

We recognize that the substance in the coffee maker (in the photograph that Officer Wood took) appears to have different coloration from the substance in the evidence bag (in the photograph that Attorney Davis took). Although the substance in the coffee maker is one piece and the substance in the evidence bag is two pieces, the substances are similarly small in size. But Prosecutor Reeves explained the differences in appearance. He testified that crack cocaine samples often change appearance after undergoing forensic testing. As an example, Prosecutor Reeves testified that it is not uncommon for a single piece of a suspected drug to break up into multiple pieces when undergoing forensic testing. Indeed, the GBI performed several tests on the substance submitted by the evidence custodian, including gas chromatography, mass spectrometry, thin layer

---

[4]Interestingly, Warner also has no personal knowledge about the marijuana found in the kitchen. Warner testified that he did not know there was any marijuana in his kitchen and had not seen any marijuana in the kitchen that day. But now, Warner does not dispute that the officers found marijuana in his kitchen.

chromatography, and electronic balance and mechanical scale tests.  These tests involve the separation of chemical substances into particles.  2 Paul C. Giannelli & Edward J. Imwinkelried, Scientific Evidence § 23.03 (5th ed. 2012) (describing common methods of identifying drugs, including gas chromatography and mass spectrometry).  Prosecutor Reeves also testified that crack cocaine usually degrades over time, which can also change its appearance.  Warner has produced nothing to rebut Prosecutor Reeves' testimony that crack cocaine can change appearance because of forensic testing or its propensity to degrade over time.

Instead, Warner relies on his own speculation as to what the officers actually found in the coffee maker and what Officer Wood could have done in the period between the execution of the search warrant on the night of August 21 and the submission to the evidence custodian on August 23.  What Warner needs is some record evidence of impropriety, and he has none.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (explaining that the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts").  Because Evans was not at the house and does not state what day or time she put ibuprofen in the coffee maker, and because there were four other people in Warner's home who also had no personal knowledge of what was in the coffee maker, Warner's allegations that Officer Wood and other Police Department officers conspired to fabricate evidence are

14

insufficient to overcome Wood's motion for summary judgment. <u>Id.</u> at 592–94, 106 S. Ct. at 1359 (explaining that "courts should not permit factfinders to infer conspiracies when such inferences are implausible").

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment to Officer Wood on all of Warner's claims.

**AFFIRMED.**